Anna STRICKLAND, Appellant,

v.

AMERICAN BAKERY AND CONFECTION-
ERY WORKERS UNION AND INDUS-
TRY NATIONAL WELFARE FUND, and
Travelers Insurance Company, a foreign
insurance company, Appellees.

No. 46009.

Supreme Court of Oklahoma.

Sept. 24, 1974.

Don Manners, Murray E. Abowitz, Oklahoma City, for appellant.

Monnet, Hayes, Bullis, Grubb, Thompson & Edwards, Oklahoma City, for appellees.

LAVENDER, Justice:

The plaintiff, Anna Strickland, brought this action as the named beneficiary to recover an additional $2,500.00 as death benefits from the American Bakery and Confectionery Workers Union and Industry National Welfare Fund, the defendant. Originally Travelers Insurance Company was a defendant in a second cause of action seeking the same recovery. The appeal as to that party has been dismissed. That part of the case is not presently before this court.

The parties shall be identified the same as in the court below with the plaintiff sometimes referred to as the "beneficiary" and the defendant as the "Fund."

Vernon Strickland was employed by a baking company and was a member of the union. The union was the collective bargaining agent between the employees and the employer. A welfare fund and benefit program had been established as the result of collective bargaining between the union and the employer. This Fund was administered through union trustees. Strickland, the employee, was a participant in this benefit program. Plaintiff was his named beneficiary. He became disabled while in the active employment of the employer and qualified for disability benefits under what was entitled Plan G of the Fund. He remained totally disabled and so qualified to receive benefits until his death in November, 1969. After his disability, Plan G was replaced by Plan K and later by Plan Q–8. This last plan was in effect at the time of Strickland's death. Plan G provided for $4,000.00 life insurance. Plan K changed the life insurance to a death benefit [1] and increased the amount to $5,500.00. Plan Q–8 increased the amount of the death benefit to $6,500.00.

On the death of Strickland, the beneficiary was paid $4,000.00 as provided in Plan G by the life insurance company. This was the plan in effect at the time of the deceased's disability. The beneficiary seeks recovery of an additional $2,500.00 under Plan Q–8, the plan in effect at the time of the death of Strickland. That plan called for a death benefit in the amount of $6,500.00.

Before trial, both parties filed a motion for summary judgment together with a supporting affidavit. None of the facts in the affidavits are controverted. The trial court sustained the motion for summary judgment of the defendant Fund and overruled plaintiff beneficiary's like motion. The court's order dismissed the action as to the defendant Fund and stated the ruling was based "on the ground that the Court finds the documents in question to be unambiguous * * *."

The sole question to be determined on this appeal is whether the beneficiary is entitled to a death benefit of $4,000.00, which she has been paid, or $6,500.00, in which event she would be entitled to recover an additional $2,500.00. The amount of the death benefit is in controversy and not the right to receive such a benefit.

The defendant Fund issued a booklet explaining benefits to the members as each plan was effective. Each booklet began with a statement from the defendant Fund to the member. It reads in part:

---

1. Changing the benefit from life insurance to a death benefit is treated by both parties as mechanical in underwriting the fund and not material in the decision of the case.

12

"Dear Member:

This booklet describes the benefit program provided for you as the result of the collective bargaining agreement between your ABC Local Union and your Employer. * * *"

The defendant Fund included in its supporting affidavit filed with its motion for summary judgment either all or a part of the collective bargaining agreements entered into between the union and the employer baking company as to the welfare fund. There was such an agreement for each plan.[2] It provides the formula under which the employer contributes to the welfare fund as to each separate plan. As the benefits (including death benefit) were raised by each subsequent plan, so was the employer's contribution.

Each plan's separate booklet explained to the member that plan's death benefit, or life insurance. After setting out the conditions of eligibility under total disability, this language is contained:

"* * * and upon your death the amount of Death Benefit then in force will be payable to your beneficiary."

As a part of the record in this case, there is another booklet. It contains the Rules and Regulation of the Fund. It too has an introductory statement to the covered employees and participating local unions. This booklet advises the Fund and the benefits of the Fund belong to the participants; and that the benefits are the result of collective bargaining agreements between ABC Local Unions and Employers. The introductory statement is concluded with information that booklets are available as to the plan of benefits applicable to each group based on the contribution rate in their collective bargaining agreement. Article V of the Rules deal with death benefits. It reads in part:

"Section 1—Death Benefit Generally

If death shall occur while the Employee is eligible and is covered by a Plan providing death benefits, the amount of death benefits at the date of death will be paid to the beneficiary designed in the Employee; * * *."

* * * * * *

"Section 3—Death Benefit Coverage During Permanent Total Disability.

* * * * * *

B. Subject to receipt * * * of due proof of the continuance of such disability * * * the death benefit coverage on such Employee shall continue without payment of contribution from year to year thereafter during the period of such permanent total disability."

Plaintiff's position is based on the argument the language found in the booklets of "and upon your death the amount of Death Benefit then in force will be payable" and "the amount of death benefits at the date of death will be paid" is at best ambiguous and should be construed against the Fund. This should then allow the beneficiary to receive death benefit of $6,500.00 as provided in Plan Q–8, the plan in effect at time of death.

2. Agreement between the employer and the fund dated April 16, 1958, provided for a contribution of 8 cents for each day for which employees subject to the collective bargaining agreement received pay, but not to exceed $3.20 for an employee in any one week. Payments so made to the fund to be used for welfare benefits for eligible employees in accordance with Plan G ($4,000.00 death benefit).

Agreement between the employer and the fund dated August 1, 1965, provided for a contribution of 12 cents for each day for which employees subject to the collective bargaining agreement received pay, but not to exceed $4.80 for an employee in any one week. Payments so made to the fund to be used for welfare benefits for eligible employees in accordance with Plan K ($5,000.00 death benefit).

Agreement between the employer and the fund dated July 1, 1968, provided for a contribution of 16 cents for each day for which employees subject to the collective bargaining agreement received pay, but not to exceed $6.40 for an employee in any one week. Payments so made to the fund to be used for welfare benefits for eligible employees in accordance with Plan Q–8 ($6,500.00 death benefit).

The defendant Fund argues each plan must be considered and construed in conjunction with the collective bargaining agreement or clause as to the welfare fund in effect at the time the particular plan was operative. We agree with that position.

48 Am.Jur.2d § 1205 states:

"Where one accepts employment under the collective bargaining agreement, he thereby ratified and accepts its terms, and his rights and his employer's rights are to be measured and adjudged by that contract.[3] A member of the bargaining unit is bound by and entitled to the benefits of the collective bargaining agreement to the benefits of the collective bargaining agreement to the same extent as if he had entered into it individually.[4]"

In the case at bar the union as a part of the collective bargaining process acted on behalf of the members of the union. Strickland was a union member. He worked under and when disabled received benefits as a result of the establishment of the welfare fund resulting from the collective bargaining contract between the union and the employer. He accepted the benefits of that contract. For the purposes here, Strickland must be considered a party to both any plan of benefits in which he was a participant and also the collective bargaining agreement as relating to the fund, and a particular plan.

The rule is well established that although not executed at the same time, where two written instruments refer to the same subject matter and on their face show that each was executed as a means of carrying out the intent of the other, both should be construed as one contract. Brake v. Blain, 49 Okl. 486, 153 P. 158

(1915); Chas. E. Knox Oil Co. v. McKee, 101 Okl. 56, 223 P. 880 (1924).

In the Brake opinion, supra, the court said:

"* * * The two agreements in writing, supra, constitute one contract, being supplementary one to the other, and should be construed together. We say this for the reason that, although not executed at the same time, they refer to the same subject-matter, and on their face show that each was executed as a means of carrying out the intent of the other. * * *"

Here there are two contracts in connection with each plan relating to the welfare fund; the plan itself as between the employee and the Fund providing benefits and the collective bargaining agreement between the employer and the union providing for contributions to the welfare fund.

Strickland participated in Plan G. He worked under the collective bargaining agreement then in effect and which referred to that plan as to the rate of contribution by the employer. The purpose of the contract with the employer was to provide for contributions to the fund for a particular purpose. That purpose was "to provide welfare benefits * * * for eligible employees * * * in accordance with Plan K of said fund." The other contract controlled the kinds and amounts of benefit an eligible employee received. The two types of contracts must be considered together as to each plan.

At time of Strickland's death, Plan Q–8 was in effect. Any contribution to the fund by the employer under the collective bargaining agreement of July 1, 1968, had to be used to pay eligible employees under Plan Q–8. That plan, in its booklet, made one of the conditions of eligibility

3. Bridges v. F. H. McGraw & Company, Ky., 302 S.W.2d 109, 1957. The opinion at page 112 states: "In some relations the union contracts as a principal, but, as we have written, a labor union exists for the benefit of its members and is their servant and agent in securing fair and just wages and good working conditions, although it may not bind a member in the exercise of [her] personal rights."

4. Britt v. Trailmobile Co., 6 Cir., 179 F.2d 569, 1950.

"in active employment." Strickland never was or ever could have been a member of that plan due to his total disability. The contribution of the employer to Plan Q–8 never included any amount based on the hours Strickland worked. He was not actively employed during the time covered by Plan Q–8. This is also true as to Plan K.

The only plan in which Strickland was a participant was Plan G. That is the only plan his employer had contributed based on his hours of work. Rules of the Fund, Article V, § 3(B) excused any further payment of contribution during disability and continued the death benefit. Total disability with proper proof could not terminate the death benefit of the particular plan in which the employee was then participating along with the employer by contributions based on that employee's hours worked. Under Plan G the employee's rights had vested.

The subsequent plans, the collective bargaining agreement, and the Rules and Regulations of the Welfare Fund contain no provisions which provide the eligible and participating employees of one plan is included in the succeeding plan.

Strickland was eligible and participated in Plan G. This was the plan to which his employer had contributed based on his work. It is the plan which controls the death benefits to be received at the time of his death. The amount of death benefit at the date of death and upon the employee's death under Plan G was $4,000.00. This is the sum the plaintiff beneficiary did receive and was entitled to be paid. The two contracts must be construed together as one. We agree with the trial court their terms are not ambiguous.

Affirmed.

WILLIAMS, V. C. J., and IRWIN, HODGES, BARNES, SIMMS and DOOLIN, JJ., concur.

BERRY, J., dissents.