Chad W. BIXLER, Jr., Phyllis M. Bixler, Leonard W. Estes, W.E. Spencer, Shirley J. Spencer, Jim W. Estes, and Joan Estes, Appellants,

v.

LAMAR EXPLORATION COMPANY, a domestic corporation, Appellee.

No. 58718.

Supreme Court of Oklahoma.

Feb. 17, 1987.

David E. Pepper, Patty Carry, Linn & Helms, Oklahoma City, for appellants.

James L. Sontag, Sontag & Ambler, Nowata, for appellee.

HARGRAVE, Vice Chief Justice.

The appellants gave a lease to Lamar Exploration Company over a certain tract of land in Nowata County on December 1, 1979. The lease provided for a one-year primary term and so long thereafter as oil or gas was produced from the lease. Two wells were drilled by Lamar Exploration Company (appellee). The first was drilled in March of 1980, produced some oil from the Bartlesville formation and then ceased production. The second well was commenced on November 2nd of 1980 and completed on February 23, 1981. This well was tested six hours on a 16/64 choke and produced at the rate of 75,000 cubic feet of gas per day and was then shut-in. Shut-in payments were tendered to the lessors (appellants) but they were rejected. Appellants informed Lamar they considered the lease terminated on May 28, 1981 and thereafter brought this action to cancel the oil-and-gas lease and quiet their title to the land.

The date the lease was signed, appellants, W.E. Spencer and Shirley J. Spencer, entered into a written agreement with Lamar Exploration Company which provided for location damages of $250, and contained the following: "Lessee agrees to commence the drilling of a minimum of two (2) wells on or before September 30, 1980 on the above described leasehold acreage." All the parties to the lease executed this document. The record is silent as to the time of execution, save for the Spencers, as above noted, and Chad W. Bixler. Mr. Bixler stated he did not receive the agreement until after the lease was signed. The

agreement is in direct conflict with the provisions of the lease. The lease's primary term expired December 1, 1980 while the agreement specifies September 30, 1980. Additionally, the agreement required the commencement of two wells by September 30, not simply production by December 1 of that year.

The appellants took the position in the trial court that the agreement was incorporated in the lease and thereby altered the primary term, shortening it to September 30, 1980, and resulting in expiration of the lease on that date since there was neither drilling activity nor production on that date. Alternately, the appellants contend there was no production in paying quantities from the shut-in gas well on December 1, 1980 and the lease expired on that date without regard to the agreement.

After appellants presented their case in chief the defendant demurred to the evidence. The trial court found the agreement not to be incorporated into the lease. The trial court's order sustaining the demurrer to the evidence finds generally for the defendant on the basis that all the evidence offered by the plaintiffs taken in its most favorable light wholly and totally fails to support plaintiffs' cause of action. In his ruling from the bench the trial judge found the agreement was not incorporated into the lease.

Appellants-lessors raise two propositions of error. First, the trial court erred in not finding the agreement was incorporated into the lease provisions which would have resulted in the termination of the lease on September 30, 1980, prior to the commencement of the second well. The plaintiffs' evidence shows that the agreement and the lease were not executed at the same time, although all parties did sign both the lease and the agreement. The agreement refers to "the leasehold acreage" but does not expressly refer to the lease under consideration now, nor does it expressly make the conditions of the agreement a part of the lease. Where two contracts, not executed at the same time,

refer to the same subject matter and show on their face that one was executed to carry out the intent of the other, it is proper to construe them together as if they were one contract. *Davis v. Hastings*, 261 P.2d 193 (Okl.1953). Here the agreement cannot be considered as carrying out the intent of the lease as appellants urge. The appellants request the agreement be considered to override the express provisions of the habendum clause. The two expressly conflict. The agreement requires two wells to be drilled prior to September 30, 1980. The lease requires only paying production by December 1, 1980. Therefore the trial court did not err in refusing to hold the agreement was not incorporated into the lease. The lease and agreement do not show on their face that each was executed to carry out the intent of the other as required. *Phillips Petroleum Company v. Widick*, 175 Okl. 376, 52 P.2d 773 (1935).

Appellants secondly contend the trial court erred in not resolving the issue of whether or not the well drilled on the premises was capable of producing in paying quantities. It is generally said that payment of a shut-in royalty will not suffice to hold a lease unless the shut-in well is capable of paying production. *Oil and Gas Law*, William & Myers, § 632.3. Consequently, the appellee must have completed a well capable of producing in paying quantities in order to hold the lease by virtue of a shut-in gas well under the habendum clause of this lease. The trial court made no finding upon this point in ruling upon the motion for judgment in demurrant's favor, denominated here as a "demurrer to the evidence". Unlike law actions, a demurrer in equity does not require a judge to disregard all evidence favorable to the demurrant's position, but to consider and weigh all the evidence adduced to determine in whose favor it preponderates. *Malnar v. Whitfield*, 708 P.2d 1093 (Okl.1985) and *Snow v. Winn*, 607 P.2d 678 (Okl.1980).

At this point the evidence before the Court is only that of the mineral owners, appellants. Generally that evidence is characterized as equivocal, showing the well to be a marginal one, and there exists some indication that the well may not be capable of production in paying quantities. When possible, in an equity action, a reviewing court should render or cause to be rendered that judgment which in its opinion should have been rendered. *Geb v. Wilkins*, 399 P.2d 456 (Okl.1965). However, remand and retrial are required when the trial court has failed to decide a material issue of fact. *Davis v. Gwaltney*, 291 P.2d 820 (Okl.1955). As demonstrated, the issue of the capability of appellee's well to produce in paying quantities is material to the resolution of this case. Thus, this action is reversed and remanded for a determination of whether the well is capable of production in paying quantities.

REVERSED AND REMANDED FOR TRIAL AS DIRECTED.

DOOLIN, C.J., and HODGES, SIMMS, OPALA, WILSON, KAUGER and SUMMERS, JJ., concur.

LAVENDER, J., concurs in result.