Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued  May  9,  2003                    Decided  June  6,  2003

No. 02-7163

NATIONAL RAILROAD PASSENGER CORPORATION,
APPELLANT

v.

EXPRESSTRAK, L.L.C.,
APPELLEE

———

Consolidated with
02–7164, 03–7058, 03–7059

———

Appeals from the United States District Court
for the District of Columbia
(No. 02cv01773)
(No. 02cv02012)

———

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

*Jack McKay* argued the cause for appellant. With him on the briefs was *Jonathan W. Gannon*.

*Philip A. Nacke* argued the cause for appellee. With him on the briefs were *John G. DeGooyer* and *Steven C. Lambert*.

Before: GINSBURG, *Chief Judge*, and ROGERS and TATEL, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* ROGERS.

ROGERS, *Circuit Judge*: In this expedited appeal, the National Railroad Passenger Corp. ("Amtrak") appeals orders of the district court (1) interpreting its lease agreements with ExpressTrak, L.L.C., to require arbitration of any disputes; (2) enjoining the parties to continue performing under the terms of the leases during arbitration; and (3) confirming an interim arbitration award. Amtrak contends that the district court failed to abide by the parties' clearly expressed intent to litigate disputes arising under the leases. Our jurisdiction to review the grant of the injunction compelling continued performance of the leases and the order confirming the interim arbitrator's award is clear. Under 28 U.S.C. § 1292(a)(1)(2002), the court has jurisdiction to review the district court's entry of the injunction because, although denominated "permanent," the injunction is interlocutory in nature, as the district court has not entered a final order winding up the parties' litigation. Under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 16(a)(1)(D), the court has jurisdiction to review the district court's order confirming the interim award. Although orders compelling arbitration are usually non-appealable under FAA § 16(b), to review either the injunction or the interim award, the court must determine whether the parties' dispute was properly arbitrable; hence, the court has pendent appellant jurisdiction over that order as well. As to arbitrability, we hold that the parties' dispute was not properly arbitrable. Accordingly, we reverse the order compelling arbitration as well as the injunction and the confirmation order, and we remand the case to the district court for trial on Amtrak's claim that ExpressTrak breached the lease agreements.

**I.**

Amtrak and ExpressTrak executed three agreements providing for the transportation of perishable goods in temperature-controlled express cars attached to Amtrak passenger trains: an Operating Agreement, a Sublease, and a Direct Lease. Under the Operating Agreement of October 27, 1999, ExpressTrak was to acquire express cars, have them refurbished, and convey the express cars to a third-party lessor. The third-party lessor would then lease the cars to Amtrak, which, in turn, would sublease the cars to ExpressTrak. Operating Agreement § 1.8. Orix Financial Services, acting as the third-party lessor, agreed to purchase 110 express cars, and on May 15, 2001, Orix executed a Headlease with Amtrak, which required Orix to lease the express cars to Amtrak. On the same day, Amtrak entered a Sublease with ExpressTrak, in which Amtrak agreed to sublease the 110 express cars to ExpressTrak. In November 2001, after financing only fifty-five of the 110 express cars, Orix suspended its funding. Amtrak and ExpressTrak subsequently entered into a letter agreement ("Direct Lease") on November 30, 2001, whereby Amtrak agreed to purchase the fifty-five remaining express cars from the refurbishing vendor, and lease them to ExpressTrak. The letter agreement stated that the parties have "substantially the same rights and obligations with respect to the railcars made subject thereto as each currently holds with respect to the railcars subject to the Sublease. . . ." Direct Lease ¶ 2. Although the parties contemplated executing a more formal document, they never did.

By letters of April 15, 2002, Amtrak informed ExpressTrak that because ExpressTrak had failed to make its January and April 2002 payments, it was in default under the Sublease and the Direct Lease (collectively "the Leases"), and Amtrak was terminating the Leases; Amtrak also demanded return of all express cars leased to ExpressTrak under the Leases. ExpressTrak paid Amtrak the overdue amounts on April 17, 2002, and by letter of April 25 to Amtrak denied that it had defaulted under the Leases and asserted that the April 15 notice of default was "ineffective and unenforceable," that

Amtrak could not unilaterally "demand return of the express cars," and that Amtrak had "defaulted on numerous obligations" under the Operating Agreement. In an attempt to resolve their differences, the parties operated under a standstill agreement from May 3, 2002, to September 8, 2002, pursuant to which Amtrak agreed not to take any steps toward repossessing the express cars. During this period, Amtrak continued to run the express cars with ExpressTrak freight and make payments to Orix, as required under the Headlease.

On September 9, 2002, Amtrak filed suit against Express-Trak, alleging that ExpressTrak had defaulted under the Leases when it failed to make timely payments, and seeking declaratory relief and damages. In response, ExpressTrak moved for a stay of the litigation pending arbitration and an order compelling Amtrak to continue conducting business, arguing that the Operating Agreement requires the parties to submit their disputes to arbitration. Amtrak then moved to enjoin the arbitration on the ground that the Leases require the parties to settle their differences by litigation, not arbitration. On October 15, 2002, ExpressTrak filed suit against Amtrak seeking a preliminary injunction and an order compelling arbitration. The district court consolidated the lawsuits, and on December 5, 2002, ruled that the dispute resolution provisions of the Operating Agreement, and not those in the Leases, governed the parties' dispute. *Nat'l R.R. Passenger Corp. v. ExpressTrak, L.L.C.*, 233 F. Supp. 2d 39 (D.D.C. 2002). Accordingly, the district court stayed both cases, directed the parties to submit their disputes to arbitration, and entered a preliminary injunction "requiring the parties to continue conducting business while such arbitration proceedings are pending." Amtrak appealed the December 5 Order and also filed a motion in the district court to set bond pursuant to Fed. R. Civ. P. 65(c), which ExpressTrak opposed.

On Amtrak's emergency motion, this court expedited its appeal, and set oral arguments for May 9, 2003. In the interim, the district court heard testimony on the amount of damages Amtrak would suffer as a result of the injunction,

and on January 27, 2003, ordered ExpressTrak to post bond by February 15, 2003, in the amount of $857,415, to cover the first three months of the injunction period. By notice of February 14, 2003, ExpressTrak informed the district court that it was unable to post bond. Amtrak responded by filing a motion to dissolve the preliminary injunction, and the district court sua sponte, on March 11, 2003, ordered ExpressTrak to post bond by March 14, 2003, in the amount of $110,000 – the maximum amount ExpressTrak claimed it could pay. ExpressTrak complied with the bond order.

The arbitration panel also convened during the interim period to consider Amtrak's request that it not be required to continue contract performance pending arbitration. Following a hearing, the panel by Order of March 19, 2003, denied Amtrak's request. *Order*, *In re Arbitration Between ExpressTrak and Amtrak* 2 (Mar. 19, 2003) ("Interim Arbitration Order"). In light of the panel's decision, Amtrak renewed its motion in the district court to dissolve the preliminary injunction, and ExpressTrak moved the district court to confirm the panel's interim award. By Order of May 1, 2003, the district court confirmed the interim arbitration award, declined to dissolve the preliminary injunction, and converted the preliminary injunction into a permanent injunction. *Order*, *Nat'l R.R. Passenger Corp. v. ExpressTrak*, *L.L.C.*, at 2 (D.D.C. May 1, 2002) ("May 1 Order").

Both parties then filed emergency motions in this court. Amtrak moved to expedite its appeal from the district court's May 1 Order, consolidate the May 1 appeal with the pending appeal of the December 5, 2002 Order, and require supplemental briefing. ExpressTrak, in turn, moved to dismiss Amtrak's appeal for lack of jurisdiction. The court granted Amtrak's emergency motion and deferred decision on the motion to dismiss pending oral argument.

## II.

The court's jurisdiction to review the district court orders enjoining the parties to continue conducting business under the Leases and confirming the interim arbitration award is

clear. First, under 28 U.S.C. § 1292(a)(1), the court has jurisdiction to review "[i]nterlocutory orders of the district courts of the United States . . . granting, continuing, modifying, refusing, or dissolving injunctions, or refusing to dissolve or modify injunctions. . . ." 28 U.S.C. § 1292(a)(1). Although the provision is typically invoked to appeal preliminary injunctions, it can be invoked to appeal permanent injunctions that are interlocutory in nature. *Smith v. Vulcan Iron Works,* 165 U.S. 518 (1897); *see also Ty, Inc. v. Publ'ns Int'l Ltd.*, 292 F.3d 512, 516 (7th Cir. 2002), *cert. denied,* 123 S. Ct. 892 (2003); *Cohen v. Bd. of Trs. of Univ. of Med. & Dentistry,* 867 F.2d 1455, 1464 n.7 (3d Cir. 1989); *CFTC v. Preferred Capital Inv. Co.,* 664 F.2d 1316, 1319 n.4 (5th Cir. 1982); 16 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3924 (2d ed. 1996). While the district court characterized its May 1 injunction as "permanent," both parties agree that the district court has not entered a final order winding up the litigation in the consolidated cases. Inasmuch as Amtrak remains compelled to operate ExpressTrak business for the remainder of the arbitration proceedings, and there has been no ruling on the merits of the parties' dispute, the district court's May 1 Order is interlocutory. Accordingly, the court has jurisdiction, pursuant to 28 U.S.C. § 1292(a)(1), to review the injunction. Second, insofar as the district court's order confirming the arbitration panel's interim award was actually an order continuing the injunction, the court has jurisdiction under 28 U.S.C. § 1292(a)(1) to review that order. Insofar as the order was "confirming . . . an [arbitration] award or partial award," 9 U.S.C. § 16(a)(1)(D), the court has jurisdiction under the FAA, which authorizes an appeal from an order confirming an interim arbitration award. *Id.*

As Amtrak contends, however, the court cannot meaningfully review the order enjoining the parties or the order confirming the interim arbitration award without determining whether the parties' dispute was properly arbitrable. Recognizing that interlocutory orders compelling arbitration are not ordinarily appealable under FAA § 16(b), Amtrak properly urges the court to exercise pendent jurisdiction to review the

question of arbitrability, and hence the correctness of the district court's decision to confirm the interim arbitration award and continue the injunction.

A court exercises pendent jurisdiction when, while reviewing an order over which it has appellate jurisdiction, it entertains an appeal from another order that, although part of the same case or controversy, would not otherwise be within its jurisdiction. 13 Wright & Miller, Federal Practice and Procedure § 3523. This court does not exercise pendent appellate jurisdiction frequently or liberally, *see Gilda Marx, Inc. v. Wildwood Exercise, Inc.*, 85 F.3d 675, 678 (D.C. Cir. 1996), but it generally will invoke pendent jurisdiction in two circumstances: (1) "when substantial considerations of fairness or efficiency demand it," *id.* at 679, such as when a non-appealable order is "inextricably intertwined" with an appealable order, *id.*, or (2) when review of the former decision is "necessary to ensure meaningful review of the latter." *Id.* (quoting *Swint v. Chambers County Comm'n*, 514 U.S. 35, 51 (1995)). *See also Jungquist v. Sheikh Sultan Bin Khalifa*, 115 F.3d 1020, 1026–27 (D.C. Cir. 1997); *Rendall-Speranza v. Nassim*, 107 F.3d 913, 917 (D.C. Cir. 1997); *Hartman v. Duffey*, 19 F.3d 1459, 1464 (D.C. Cir. 1994); *Wagner v. Taylor*, 836 F.2d 578, 586 (D.C. Cir. 1987); *cf. Swint,* 514 U.S. 35; *McKesson Corp. v. Islamic Republic of Iran*, 52 F.3d 346, 353 (D.C. Cir. 1995).

Both justifications for exercising pendent jurisdiction exist in this case. First, the district court's grant of the injunction compelling continued performance was "inextricably intertwined" with, and in fact, dependent upon, its determination that the parties' dispute was arbitrable. After determining that the parties' dispute was governed by the arbitration clause in the Operating Agreement, to wit section 6.6, rather than the litigating clause in the Leases, to wit section 30 of the Sublease, the district court enjoined the parties to continue business operations "as called for by [s]ection 6.6(e)" – a provision found only in the arbitration clause of the Operating Agreement. *Nat'l R.R. Passenger Corp.*, 233 F. Supp. 2d at 52. The district court accordingly declined to engage in the traditional four-step analysis that typically accompanies in-

junction orders, *see, e.g., O'Hara v. Dist. No. 1–PCD*, 56 F.3d 1514, 1522 (D.C. Cir. 1995), instead reasoning, based on section 6.6(e) of the Operating Agreement, that "a form of injunctive relief was clearly contemplated pending the submission of a dispute to the arbitration process." *Nat'l R.R. Passenger Corp.*, 233 F. Supp. 2d at 50. Any doubt that the injunction is inextricably bound to the order compelling arbitration is allayed by the fact that the district court relied on the Interim Arbitration Order to make the injunction permanent, and reiterated that it was converting the "injunction from a preliminary to a permanent one . . . to enforce the bargained-for terms of [s]ection 6.6(e) of the Operating Agreement." *May 1 Order*, at 9. Although pendent appellate jurisdiction over orders compelling arbitration will not always be appropriate where a party has appealed a preliminary injunction, the unique factual context of this case reveals that the orders enjoining the parties and compelling arbitration were not just legally, but also factually intertwined, and that Amtrak is not "parlay[ing] . . . collateral orders into multi-issue interlocutory appeal tickets." *Swint*, 514 U.S. at 49. Second, because the district court can only enforce an arbitral award if the arbitrator had authority to grant it, 9 U.S.C. § 10(d)(4), effective review of the confirmation order would – as ExpressTrak concedes – be detrimentally impaired without first determining whether the district court properly submitted the parties' dispute to arbitration.

Nor is FAA § 16(b), which ordinarily prevents appellate review of arbitration orders, *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 87 n.2 (2000), a bar to the court's exercise of pendent jurisdiction. In its brief, ExpressTrak relied heavily on *IDS Life Insurance Co. v. SunAmerica, Inc.*, 103 F.3d 524 (7th Cir. 1996), in which the Seventh Circuit declined to exercise pendent appellate jurisdiction over an order staying federal court proceedings pending arbitration. *Id.* at 528. Observing that the "validity and scope" of the doctrine of pendent appellate jurisdiction has "been thrown into doubt by the Supreme Court's decision in *Swint*," *id.* (citing 514 U.S. 35), the court viewed the exercise of pendent jurisdiction in that case as contrary to Congress' "support for facilitating

arbitration in order to effectuate private ordering and lighten the caseload of the federal courts." *Id.* The Supreme Court in *Swint* cautioned against "a rule loosely allowing pendent appellate jurisdiction," 514 U.S. at 49, and adhering to its advice, this court has exercised discretion by limiting pendent jurisdiction to the two circumstances described above. *See, e.g., Jungquist*, 115 F.3d 1020; *Rendall-Speranza*, 107 F.3d 913; *Gilda Marx,* 85 F.3d 675; *cf. McKesson Corp.*, 52 F.3d 346. But nothing in *Swint*, or even in *IDS Life*, suggests that the Supreme Court has nullified the doctrine of pendent jurisdiction.

Similarly, the court is unpersuaded that the "pro-arbitration tilt" of FAA § 16, which promotes appeals from orders barring arbitration and limits appeals from orders directing arbitration, precludes – much less eliminates – the long-standing doctrine of pendent jurisdiction. As an initial point, even the Seventh Circuit in *IDS Life* acknowledges it "cannot be certain" that Congress "precluded the application of the doctrine of pendent appellate jurisdiction to [orders compelling arbitration]." 103 F.3d at 528. Furthermore, since *IDS Life*, the Second and Ninth Circuits have exercised pendent appellate jurisdiction to review orders compelling arbitration, *Quackenbush v. Allstate Ins. Co.*, 121 F.3d 1372, 1379–80 (9th Cir. 1997); *Freeman v. Complex Computing Co.,* 119 F.3d 1044 (2d Cir. 1997), and the Eighth Circuit has indicated that it would invoke the doctrine if review of an arbitration order was "necessary to ensure meaningful review of the appealable issue." *Manion v. Nagin*, 255 F.3d 535, 540 (8th Cir. 2001) (citation omitted). Like the Second Circuit, we conclude that "[a]lthough the FAA clearly manifests support for [arbitration]," there is no indication that Congress intended § 16 to interfere with the court's authority to exercise pendent jurisdiction. *Freeman*, 119 F.3d at 1050.

We therefore hold that, because the arbitrability of the dispute is inextricably intertwined with other orders over which we have jurisdiction, and because we must finally resolve the arbitrability of the dispute in order to review those orders, we have pendant appellate jurisdiction to resolve the issue of arbitrability.

### III.

Turning to the issue of arbitrability, we begin by acknowledging that "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Co.*, 460 U.S. 1, 24 (1983). Nonetheless, "the FAA does not require parties to arbitrate when they have not agreed to do so." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 478 (1989) (citation omitted). The district court interpreted section 6.6 of the Operating Agreement together with section 30 of the Sublease to limit court litigation to matters peripheral to arbitration or not capable of being arbitrated, and it found that the parties' underlying dispute is not such an issue. *Nat'l R.R. Passenger Corp.*, 233 F. Supp. 2d at 49–50. Amtrak contends, and we agree, that the district court's interpretation conflicts with the plain meaning of section 13.2 of the Sublease, which contemplates court litigation of a case in which Amtrak alleges a breach of contract, as it does here. Because the Sublease came later, section 13.2 controls, and the district court erred by applying the arbitration clause of the Operating Agreement, rather than the litigation clauses of the Leases, to compel the parties to submit their dispute to arbitration.

In determining whether the parties agreed to arbitrate their dispute, our review is de novo. *AT&T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 649 (1986); *KenAmerican Res., Inc. v. Int'l Union, United Mine Workers of Am.*, 99 F.3d 1161, 1163 (D.C. Cir. 1996). To discern the parties' intent, the court applies "ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *see also Bailey v. Fed. Nat'l Mortgage Ass'n*, 209 F.3d 740, 746 (D.C. Cir. 2000). The parties' agreements provide that they are to be interpreted under District of Columbia law. Operating Agreement § 6.7; Sublease § 25. Under the applicable District of Columbia law, a contract "containing a term inconsistent with a term of an earlier contract between the same parties regarding the same subject matter [is] interpreted to rescind the inconsistent term in the earlier contract." *Chang*

11

*v. Louis & Alexander, Inc.*, 645 A.2d 1110, 1114 (D.C. 1994) (citing *Egan v. McNamara*, 467 A.2d 733, 740 (D.C. 1983)); *see also Hershon v. Hellman Co.*, 565 A.2d 282, 284 (D.C. 1989).

When the parties executed the Operating Agreement in 1999, they agreed to arbitrate their disputes "concerning the interpretation, application, or implementation of this agreement." Operating Agreement § 6.6(a). Eighteen months later, however, the parties executed the Sublease, which bound ExpressTrak to Amtrak on substantially the same terms that bound Amtrak to Orix under the Headlease. Section 4.1 of the Sublease requires ExpressTrak to make quarterly payments to Amtrak on the same date as Amtrak's payments to Orix, and section 5.2 of the Sublease, like section 5.2 of the Headlease, makes those payments an "absolute and unconditional" obligation. The default and dispute resolution provisions in the Sublease similarly mirror those in the Headlease. Thus, in the event of a default by ExpressTrak, Amtrak has the right to "proceed by appropriate court action or actions, either at law or in equity, to enforce performance by [ExpressTrak] . . . or to recover damages for the breach thereof." *Compare* Sublease § 13.2(i) *with* Headlease § 13.2(i); *see also* Sublease § 13.2(vii); Headlease § 13.2(viii). Section 30 of the Sublease further provides, in relevant part, that Amtrak and ExpressTrak:

> waive all rights to a trial by jury in the event of any litigation with respect to any matter related to this lease or the operative documents, and [both parties] irrevocably consent to the jurisdiction of the United States District Court for the District of Columbia . . . in connection with any action or proceeding arising out of or relating to this lease or the [O]perative [D]ocuments.

Sublease § 30; *cf.* Headlease § 30. As noted, the subsequently executed Direct Lease gives Amtrak and ExpressTrak "substantially the same rights and obligations" as those set forth in the Sublease. Direct Lease ¶ 2.

By its specific terms, section 6.6 of the Operating Agreement applies to disputes "concerning the interpretation, appli-

cation, or implementation of *this* agreement." Operating Agreement § 6.6(a) (emphasis added). By contrast, section 30 of the Sublease applies to "*any* litigation with respect to *any* matter related to this lease or the [O]perative [D]ocuments." Sublease § 30 (emphasis added). The Operating Agreement is expressly included in the Sublease's definition of "Operative Documents." Sublease § 1.1. That section 30 supplants section 6.6 of the Operating Agreement is further evidenced by the fact that section 30 twice states that it applies to any action arising out of "this Lease *or the [O]operative [D]ocuments*." Sublease § 30 (emphasis added). Furthermore, section 13.2(ii) of the Sublease, which provides for cancellation or termination of the Leases upon ExpressTrak's default, conflicts with section 6.6(e) of the Operating Agreement, which requires the parties to continue conducting business pending resolution of their dispute. The language of the parties' agreements thus reflects District of Columbia law that in this context, the later provisions, section 30 and 13.2, rescind the earlier provision, section 6.6. *See Chang,* 645 A.2d at 1114; *Hershon,* 565 A.2d at 284; *Egan,* 467 A.2d at 740; *see also Swensen's Ice Cream Co. v. Corsair Corp.*, 942 F.2d 1307, 1309 (8th Cir. 1991); *Matterhorn, Inc. v. NCR Corp.*, 763 F.2d 866, 872–73 (7th Cir. 1985); *Seaboard Coast Line R.R. Co. v. Trailer Train Co.*, 690 F.2d 1343, 1348–49 (11th Cir. 1982).

ExpressTrak's position that section 21.2 of the Sublease demonstrates that the Sublease was not intended to modify or supersede the Operating Agreement is mistaken. Section 21.2 provides that "[e]xcept for the other Operative Documents, this Lease exclusively and completely states the rights of Lessor and Lessee with respect to the leasing of the Units and supersedes all other agreements . . . ." Sublease § 21.2. This provision, however, does no more than preserve sections of the Operating Agreement that set forth the parties' rights under the Leases and do not conflict with Sublease provisions. Section 1.8 of the Operating Agreement, which among other things, sets a cap on the amount of monthly rent ExpressTrak must pay under the Sublease, exemplifies the type of Operating Agreement provision section 21.2 was

designed to protect. Section 21.2 cannot, however, alter the conclusion that sections 13.2 and 30 of the Sublease conflict with the Operating Agreement and supersede it under the governing law.

Nor can we interpret section 30 – as the district court did, and as ExpressTrak urges – to be merely a forum selection clause that permits litigation only when a party challenges the validity of the arbitration clause or its application. Section 13.2 of the Sublease specifically contemplates court litigation where Amtrak alleges breach of contract. Sublease §§ 13.2(i) & (vii). The district court's interpretation of section 30 thus conflicts with the plain language of section 13.2, which controls the dispute in this case. ExpressTrak's contention that section 13.2 is a right secondary to arbitration is equally unpersuasive. Nothing in the Sublease supports the assertion that the parties intended for arbitration to occur before a lawsuit could be filed. *Cf. Kvaerner v. Bank of Tokyo–Mitsubishi, Ltd.,* 210 F.3d 262 (4th Cir. 2000).

In sum, arbitration "is a matter of consent, not coercion." *Volt*, 489 U.S. at 479. While federal policy favors arbitration, that policy cannot "override the will of the parties by giving the arbitration clause greater coverage than the parties intended." *Nat'l R.R. Passenger Corp. v. Boston & Maine Corp.*, 850 F.2d 756, 760 (D.C. Cir. 1998). Here, the parties' intent to litigate disputes like this one, expressed in sections 13.2 and 30 of the Sublease, is clear and supercedes section 6.6. of the Operating Agreement. Accordingly, because the district court erred in compelling arbitration, affirming the interim arbitration award, and granting an injunction compelling continued performance, we reverse the orders of December 5, 2002 and May 1, 2003, and remand the case to the district court for trial on Amtrak's breach claims.