# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued December 4, 2007          Decided July 8, 2008

No. 06-7130

ALIRON INTERNATIONAL, INC.,
APPELLANT

v.

CHEROKEE NATION INDUSTRIES, INC.,
APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 05cv00151)

———

*Kenneth A. Martin* argued the cause and filed the briefs for appellant.

*James J. Proszek* argued the cause for appellee. With him on the brief was *John B. Rudolph*. *Steven D. Cundra* entered an appearance.

Before: HENDERSON, GARLAND, and BROWN, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* GARLAND.

GARLAND, *Circuit Judge*:  The question presented on this appeal is whether Aliron International, Inc. must arbitrate its breach of contract dispute with Cherokee Nation Industries, Inc. The district court decided that arbitration is required, and we agree.

I

In November 1998, the United States Army awarded Cherokee Nation Industries, Inc. (CNI) a "Prime Contract" to provide dental services to Army personnel stationed in Germany.  Because it had never before performed such work for the government, CNI entered into a "Subcontract" with Aliron International, Inc. to provide the service and staffing resources that CNI needed to fulfill its duties under the Prime Contract. The Subcontract provided that Aliron would perform 49% of the work and receive 49% of the Prime Contract's net revenue.  The parties agreed that the Subcontract "shall be construed and interpreted in accordance with the laws of the State of Oklahoma," Subcontract ¶ 22.0 (Appellant's Appendix (A.A.) 23), and that "any dispute between the parties will be submitted to binding arbitration in the State of Oklahoma," *id*. ¶ 28.0 (A.A. 26).  Oklahoma law, the parties further agreed, "shall govern the arbitration proceedings."  *Id*.

Approximately two weeks after Aliron began contract performance, CNI notified Aliron that the Status of Forces Agreement (SOFA) between the United States and Germany precluded CNI from employing a subcontractor to perform its obligations under the Prime Contract.  To comply with the SOFA without harming CNI's ability to fulfill its Prime Contract responsibilities, CNI and Aliron entered into an "Agreement for Administrative Support and Transfer of Personnel" (the "Support Agreement").  Under the Support Agreement, Aliron effectively transferred its employees to CNI,

thereby avoiding the SOFA's subcontracting prohibition. The parties' financial arrangement remained the same: CNI agreed to pay Aliron 49% of the Prime Contract's net revenue in return for access to Aliron's employees. Like the Subcontract, the Support Agreement provided that it "shall be construed and interpreted according to the law of the State of Oklahoma." Support Agreement ¶ 13 (A.A. 14). Unlike the Subcontract, the Support Agreement did not include an express provision requiring arbitration of all disputes.

On January 21, 2005, Aliron filed this action against CNI in the United States District Court for the District of Columbia, invoking the court's diversity jurisdiction. Aliron alleged that, after April 1, 2004, CNI ceased making payments to Aliron in breach of its obligations under the Support Agreement. Aliron claimed damages exceeding $1,800,000. Compl. ¶ 16. Pursuant to the Federal Arbitration Act, 9 U.S.C. § 4, CNI moved to compel arbitration of the dispute. CNI argued that, although only the Subcontract contains an express arbitration clause, the two documents should be read together.

The district court agreed. Following the relevant Oklahoma rule of contract construction, the court held that, "because the Subcontract and the Support Agreement involve the same subject matter, and because the plain language on the face of the Support Agreement indicates that it was entered into to preserve the intent of the Subcontract, they must be construed together as one contract." *Aliron Int'l, Inc. v. Cherokee Nation Indus., Inc.*, 2006 WL 1793295, at *3 (D.D.C. June 28, 2006). The court concluded that the arbitration provision "of the Subcontract . . . governs [Aliron]'s claims that CNI has breached the Support

Agreement," and it granted CNI's motion to compel arbitration and dismissed the case in its entirety. *Id*. Aliron now appeals.[1]

II

The district court properly examined CNI's motion to compel arbitration under the summary judgment standard of Federal Rule of Civil Procedure 56(c), as if it were a request for "'summary disposition of the issue of whether or not there had been a meeting of the minds on the agreement to arbitrate.'" *Aliron Int'l, Inc.*, 2006 WL 1793295, at *1 (quoting, inter alia, *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 54 n.9 (3d Cir. 1980)); *see Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003). Under Rule 56(c), summary judgment is appropriate only if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986) (quoting FED. R. CIV. P. 56(c)). We review the district court's resolution of this question de novo. *See Czekalski v. Peters*, 475 F.3d 360, 362 (D.C. Cir. 2007).

The Federal Arbitration Act provides as follows:

> A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . .

---

[1] In *Green Tree Financial Corp. v. Randolph*, the Supreme Court held that "an order compelling arbitration and dismissing a party's underlying claims is a 'final decision with respect to an arbitration' within the meaning of § 16(a)(3) of the Federal Arbitration Act, 9 U.S.C. § 16(a)(3), and thus is immediately appealable pursuant to that Act." 531 U.S. 79, 82 (2000).

> . or the refusal to perform the whole or any part thereof, . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. "When deciding whether the parties agreed to arbitrate a certain matter . . . , courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *see National R.R. Passenger Corp. v. ExpressTrak, L.L.C.*, 330 F.3d 523, 529 (D.C. Cir. 2003). The parties here agree that the relevant state law is that of Oklahoma, as both the Subcontract and the Support Agreement state that they are to be construed in accordance with Oklahoma law. *Cf. National R.R. Passenger Corp.*, 330 F.3d at 530 (applying the law of the District of Columbia where "[t]he parties' agreements provide that they are to be interpreted under District of Columbia law"). In Oklahoma, "[d]etermining whether a contract is ambiguous and interpretation of an unambiguous contract are questions of law" for the court. *Otis Elevator Co. v. Midland Red Oak Realty, Inc.*, 483 F.3d 1095, 1101 (10th Cir. 2007); *see Palace Exploration Co. v. Petroleum Dev. Co.*, 374 F.3d 951, 953 (10th Cir. 2004) (citing *Lewis v. Sac & Fox Tribe of Okla. Hous. Auth.*, 896 P.2d 503, 514 (Okla. 1994)); *Pitco Prod. Co. v. Chaparral Energy, Inc.*, 63 P.3d 541, 545 (Okla. 2003).

## A

The Oklahoma Supreme Court has long instructed that "[w]here two contracts, not executed at the same time, refer to the same subject matter and show on their face that one was executed to carry out the intent of the other, it is proper to construe them together as if they were one contract." *Bixler v. Lamar Exploration Co.*, 733 P.2d 410, 411-12 (Okla. 1987) (citing *Davis v. Hastings*, 261 P.2d 193 (Okla. 1953)); *see*

*Strickland v. American Bakery & Confectionery Workers Union*, 527 P.2d 10, 13 (Okla. 1974); *Doss Oil Royalty Co. v. Lahman*, 302 P.2d 157, 161 (Okla. 1956). The parties do not dispute that the rule of contract construction set forth in *Bixler* controls this case. Hence, two criteria must be satisfied before we can conclude that the Subcontract's arbitration provision governs disputes under the Support Agreement: (1) the Subcontract and Support Agreement must each refer to the same subject matter, and (2) the Support Agreement must show on its face that it was executed to carry out the intent of the Subcontract.

The first element of the *Bixler* test is satisfied here. Both the Subcontract and the Support Agreement refer to the same subject matter -- the manner in which Aliron and CNI will work together to enable CNI to perform its obligation under the Prime Contract to provide dental services for Army personnel, and the amount that Aliron will be paid in compensation therefor. The Subcontract contemplates cooperation through a traditional subcontracting relationship: under it, CNI would have utilized Aliron's medical personnel in return for a 49% share of the Prime Contract's net revenue. Subcontract ¶ 3.0 (A.A. 18). The Support Agreement, made necessary by the SOFA's prohibition on subcontracting, simply altered the technical form of the relationship: instead of establishing a subcontract, it effectively transferred Aliron's employees to CNI's payroll, again for 49% of net revenue. Support Agreement ¶ 2 (A.A. 12). Notwithstanding that the two agreements took slightly different approaches to achieving the same outcome -- effective performance of the Prime Contract and compensation to Aliron therefor -- a single subject matter unites both documents.

The second element of the *Bixler* test is also readily satisfied. The Support Agreement states that "CNI and Aliron agree to continue their relationship under this Administrative Support Agreement *with the intent of preserving the benefits and*

*obligations undertaken by the parties in the Subcontract*." *Id.* preamble (A.A. 12) (emphasis added). It further states that "[t]his arrangement is entered into *to preserve the bargain between the parties reached in the Subcontract* between Aliron and CNI, . . . which the parties could not implement because of limitations on subcontracting imposed by the applicable SOFA." *Id*. ¶ 1 (A.A. 12) (emphasis added). It is hard to imagine a more definitive statement that one contract "was executed to carry out the intent of the other." *Bixler*, 733 P.2d at 412. Because both *Bixler* elements are thus satisfied, we must construe the two contracts "together as if they were one contract." *Id*.

Aliron has little to say about the second element of the *Bixler* test, but it does maintain that the two contracts do not refer to the same subject matter. Under the Subcontract, Aliron argues, it "was to perform 49% of the prime contract with its own employees," while under the Support Agreement it "effectively sold its employees to CNI to enable CNI to perform [the] Prime Contract." Appellant's Reply Br. 14. This distinction is insufficient. Oklahoma law does not require that two contracts be identical in all respects to be construed as one. *See, e.g.*, *Strickland*, 527 P.2d at 13-14 (construing a welfare benefit plan and a collective bargaining agreement together as one contract to determine a beneficiary's death benefits). The fact that the Subcontract and the Support Agreement travel along separate paths to reach the same goal is of no moment. As CNI aptly puts it:

> Regardless of whether the personnel supplied by Aliron worked as "subcontractors" to CNI or were "sold" to CNI, the substance of the arrangement was the same -- CNI used dental personnel hired, credentialed and supplied by Aliron to perform CNI's obligations to the Army under the Prime Contract in

return for CNI's payment to Aliron of 49% of the net revenue CNI received under the Prime Contract.

Appellee's Br. 19.

B

Aliron makes two additional arguments in favor of reversing the district court's judgment. First, it asserts that extrinsic evidence shows the parties entered into the Support Agreement with the intent that it not contain an arbitration requirement. That evidence is in the form of an affidavit from Aliron's vice president, Ron Grow, who represents that he negotiated to exclude an arbitration clause from the Agreement. But Oklahoma law bars the consideration of such extrinsic evidence unless a contract is ambiguous. *See, e.g.*, *Pitco Prod. Co.*, 63 P.3d at 546 ("If a contract is complete in itself, and when viewed as a totality, is unambiguous, its language is the only legitimate evidence of what the parties intended. That intention cannot be divined from extrinsic evidence but must be gathered from a four-corners' examination of the instrument."). It further provides that the question of whether a contract is ambiguous, and thus requires extrinsic evidence to clarify its meaning, is a question of law for the court. *See Palace Exploration Co.*, 374 F.3d at 953; *Pitco Prod. Co.*, 63 P.3d at 545. Following *Bixler*, we have read the Subcontract and Support Agreement together as a single contract. And because we have concluded that the contract is not ambiguous, we cannot consider the extrinsic evidence that Aliron offers.

Second, Aliron argues that it should not be required to submit to arbitration because it never agreed to the Subcontract that contains the arbitration requirement. Specifically, Aliron alleges: "[T]he Subcontract that CNI relies [on] is not signed by Aliron. Therefore, CNI failed to sustain its burden to establish

that an agreement to arbitrate exists." Appellant's Reply Br. 11. This contention -- based on the fact that the only copy of the Subcontract in the record is unsigned -- is inconsistent with Aliron's repeated representations that it *did* enter into a subcontract with CNI. *See, e.g.*, Compl. ¶ 6 ("CNI subcontracted with Aliron to perform 49% of the work."); *see also* Support Agreement ¶ 1 (A.A. 12) (discussing the "bargain between the parties reached in the Subcontract between Aliron and CNI"). Moreover, it is a contention that Aliron never raised in the district court. Following our well-settled practice, we will not consider Aliron's missing-signature contention for the first time on appeal. *See, e.g.*, *Kassem v. Washington Hosp. Ctr.*, 513 F.3d 251, 255 n.3 (D.C. Cir. 2008); *Chappell-Johnson v. Powell*, 440 F.3d 484, 489 (D.C. Cir. 2006); *District of Columbia v. Air Fla., Inc.*, 750 F.2d 1077, 1084 (D.C. Cir. 1984).

## III

We conclude that, because the Subcontract and Support Agreement refer to the same subject matter, and because the Support Agreement plainly evidences that it was executed to preserve the intent of the Subcontract, the two contracts must be read together as one under Oklahoma law. *See Bixler*, 733 P.2d at 411-12. Accordingly, paragraph 28.0 of the Subcontract, which requires that "any dispute between the parties" be submitted to binding arbitration, applies with equal force to any dispute that arises under the Support Agreement. The judgment of the district court is therefore

*Affirmed.*