**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 17-1055**

RAINBOW SCHOOL, INC.,

Plaintiff – Appellee,

v.

RAINBOW EARLY EDUCATION HOLDING LLC; REE SOUTHEAST, INC.,

Defendants – Appellants.

**No. 17-1123**

RAINBOW SCHOOL, INC.,

Plaintiff – Appellee,

v.

RAINBOW EARLY EDUCATION HOLDING LLC; REE SOUTHEAST, INC.,

Defendants – Appellants.

Appeals from the United States District Court for the Eastern District of North Carolina, at Raleigh. Terrence W. Boyle, District Judge. (5:14-cv-00482-BO)

Argued: January 25, 2018                                        Decided: April 10, 2018

Before GREGORY, Chief Judge, and NIEMEYER and AGEE, Circuit Judges.

Affirmed in part and dismissed in part by published opinion. Judge Agee wrote the opinion, in which Chief Judge Gregory and Judge Niemeyer concurred.

––––––––––

**ARGUED:** Carl Moeller Newman, CRANFILL, SUMNER & HARTZOG, LLP, Raleigh, North Carolina, for Appellants. Susan Freya Olive, OLIVE & OLIVE, PA, Durham, North Carolina, for Appellee. **ON BRIEF:** Pankaj K. Shere, Jaye E. Bingham-Hinch, David G. Williams, CRANFILL, SUMNER & HARTZOG, LLP, Raleigh, North Carolina, for Appellants. David L. McKenzie, OLIVE & OLIVE, PA, Durham, North Carolina, for Appellee.

––––––––––

AGEE, Circuit Judge:

After finding that Rainbow Early Education Holding LLC ("Early Education") had violated the terms of a consent judgment and permanent injunction, the district court held Early Education in contempt and awarded $60,000 to Rainbow School, Inc. ("the School"), plus attorney's fees and costs. When the School moved for additional relief based on what it alleged to be continued and new violations of the injunction, the district court deferred a final determination and ordered Early Education to pay for an audit to assist in determining whether violations remained and could reasonably be cured. Early Education appeals both decisions. For the reasons set out below, we affirm the district court's finding of contempt and award of sanctions, and dismiss for lack of jurisdiction Early Education's appeal from the order requiring it to undergo an audit.

I.

A.

The School has run a childcare facility—Rainbow School—in Fayetteville, North Carolina, for over twenty years. In addition to using the word "rainbow" in its name, the School uses rainbow imagery on its logo.

Early Education operates approximately 100 childcare facilities in several states, including North Carolina.[1] In December 2014, Early Education opened a Fayetteville

---

[1] Defendant REE Southeast, Inc., is affiliated with Early Education, and the two entities can be treated as one for purposes of this appeal. References to "Early Education" thus encompass both defendants.

branch near the School. It operated under the name "Rainbow Child Care Center" ("the Fayetteville facility"), and, like the School, it also used rainbow imagery on its logo.

Within a few weeks of the Fayetteville facility's opening, the School sued Early Education in the United States District Court for the Eastern District of North Carolina for common law trademark infringement; false advertising and false designation of origin in violation of the Lanham Act; and unfair and deceptive trade practices in violation of North Carolina law. Following discovery and the district court's issuance of a preliminary injunction against Early Education, the Parties entered into a settlement agreement. The district court entered a consent judgment and permanent injunction consistent with that agreement.

Under the terms of the consent judgment, Early Education did "not contest entry of judgment . . . as though the allegations of trademark infringement had been proven at trial." J.A. 77. Early Education was enjoined from:

- "doing business as 'Rainbow Child Care Center' in the Fayetteville, North Carolina metropolitan area";

- "using the word 'Rainbow' in connection with their business in the Fayetteville metropolitan area, including but not limited to use by them of the word 'Rainbow' in connection with the provision of child care, preschool, before-school, afterschool, and summer camp services in the Fayetteville metropolitan area";

- "using the web address . . . www.rainbowccc.com/fayetteville2 [("prohibited /fayetteville2 address")] or any other web address or domain name using the word 'rainbow' in connection with any business or services offered by them in the Fayetteville metropolitan area";

- "using any rainbow design on any website or domain identifying or advertising any business or services offered by them in the Fayetteville, North Carolina metropolitan area, but this restriction . . . does not . . .

4

restrict or prevent the use of the word 'rainbow' or a rainbow design on the general corporate website."

J.A. 77–78. In addition, Early Education agreed to

> redirect their new website with respect to any connection to the main corporate website for Rainbow Child Care Centers found at www.rainbowccc.com [by] creating a stand-alone web page for the [Fayetteville facility] and routing all links to www.rainbowccc.com through a forwarding page so that the word "rainbow" will not appear on the stand-alone web page for [the Fayetteville facility], even as a forwarding tag. . . . [A]nd there shall not be any links from [Early Education's] main corporate website to the stand-alone web page for [the Fayetteville facility].

J.A. 78–79.

In addition, the settlement agreement—though not the consent judgment—contained a liquidated damages clause setting out how the Parties would handle violations of the injunction. The Parties agreed that a material breach of the permanent injunction "could cause harm to" the School's business. J.A. 186. If the School believed Early Education was violating the injunction, the School was required to provide Early Education with written notice. Early Education, in turn, had ten days following receipt of the notice to cure the violation. If Early Education failed to cure the violation in that time, or if it had committed four violations within one year, the School could "seek a court order requiring compliance" with the injunction. J.A. 186. And if a court determined that Early Education had violated the injunction and not cured it, then Early Education would be "liable to [the School] for liquidated damages in the amount of $30,000.00, without prejudice to such other remedies, if any, as may be available, including but not limited to an award of attorneys' fees." J.A. 186–87. In agreeing to this liquidated damages provision, the Parties acknowledged

5

that any damages to [the School] will be inherently difficult to ascertain with certainty . . . . Given the Parties' experience in the child care industry and the nature of the losses that may result from a breach . . ., the Parties agree[d] that this provision is not a penalty, but rather a reasonable measure of damages.

J.A. 187.

## B.

In May 2016, the School filed a contempt motion against Early Education in the district court ("the First Motion"). It alleged multiple violations of the injunction associated with the Fayetteville facility's website, including the use of rainbow logos in online photo galleries and the use of the word "rainbow" in "domain names, . . . links, and . . . metatags used to drive traffic to" the site. J.A. 90.[2] It also pointed to a pop-up page that appeared on the Fayetteville facility's website, which asked users to allow Early Education's corporate website to track the user's location. The School sought damages and fees for the alleged violations.

Early Education filed a cursory response stating that it was not in violation of the injunction, that any violations were inadvertent omissions and errors that had been timely cured, and that the School had not been injured by any violations that had occurred.

In August 2016—before the district court ruled on the First Motion—the School filed a second contempt motion ("the Second Motion"). This time, the School alleged that Early Education was violating the injunction by keeping the prohibited /fayetteville2

---

[2] "Metatags are HTML code intended to describe the contents of the web site," and are "not visible to Internet users." *Retail Servs., Inc. v. Freebies Publ'g*, 364 F.3d 535, 541 n.1 (4th Cir. 2004).

address "live" as a redirect page to the Fayetteville facility's new stand-alone website. The Second Motion also alleged Early Education violated the injunction by sending an invitation to residents of the Fayetteville, North Carolina, metropolitan area that advertised a "Rainbow Child Care Center" summer social event. The invitation encouraged recipients to visit Early Education's corporate website to learn where the event would be held in their area.

Early Education filed a lengthier response to the Second Motion, denying that it was in contempt and claiming that it had cured the alleged violations involving the prohibited /fayetteville2 address. As for the summer social invitation, Early Education explained that it had been inadvertently sent and did not violate the injunction because it did not advertise or reference the Fayetteville facility.

At the conclusion of a hearing on August 30, the district court granted both Motions. Pointing to the settlement agreement's damages provision, the court awarded $60,000 in liquidated damages, noting that it found multiple violations as alleged as part of each Motion. The court also stated that it would award attorney's fees, allowed the School the opportunity to submit evidence as to the amount of those fees, and noted that a written order would follow.

On December 14, 2016, the district court issued its written order granting the First and Second Motions ("December 14 order"). *Rainbow Sch., Inc. v. Rainbow Early Educ. Holding LLC*, No. 5:14-CV-482-BO, 2016 WL 7243538 (E.D.N.C. Dec. 14, 2016). The order identified four categories of violations by Early Education: (1) the photo gallery on the Fayetteville facility's new website contained multiple images depicting rainbows; (2)

7

the Fayetteville facility website used the word "rainbow" in multiple places (including emails, links, the pop-up tracking request, and metatags); (3) the prohibited /fayetteville2 address was still in use; and (4) Early Education had invited Fayetteville area residents to a summer social using the "rainbow" moniker. The district court then observed that the School had been harmed, pointing out actual examples of confusion associated with the violations. It also noted there was a presumption of harm resulting from trademark infringement and pointed to the Parties' settlement agreement contemplating this sort of harm and agreeing to a liquidated damages amount for any violations of the injunction. In sum, the district court concluded $60,000 was "a reasonable measure of damages, as voluntarily agreed to by the [P]arties" and merited in light of the numerous violations the court found pursuant to each Motion. *Id.* at \*3. Lastly, it awarded the School $36,162.36 in attorney's fees and costs.

Early Education noted a timely appeal, and the Court has jurisdiction pursuant to 28 U.S.C. § 1291.[3]

---

[3] This Court can hear an appeal from a finding of contempt when the finding is entered after the order in the underlying action and the court has adjudicated the merits of the underlying motions. *See* 28 U.S.C. § 1291 (stating the Court has jurisdiction over a district court's final decisions); *see also Gelboim v. Bank of Am. Corp.*, 135 S. Ct. 897, 902 (2015) (noting a final decision "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment" such that the "district court disassociates itself from [the] case" (internal quotation marks omitted)); *Consolidation Coal Co. v. Local 1702, United Mineworkers of Am.*, 683 F.2d 827, 830–31 (4th Cir. 1982) (observing that civil contempt orders are not usually appealable because the issue can be raised "in an appeal of the underlying claim"). This Court has jurisdiction over this appeal because the district court entered the finding of contempt after the permanent injunction order and has resolved the merits of the First and Second Motions.

## C.

After the hearing on the First and Second Motions, but before the district court issued its December 14 order, the School filed a third contempt motion ("Third Motion"). Among other things, the Third Motion asked the district court to appoint an auditor to conduct a thorough review of Early Education's operations to assess the extent of any ongoing violations and the viability of further compliance with the injunction. The School asserted Early Education continued to violate the injunction by, among other things, promoting the Fayetteville facility on its corporate website, linking the prohibited /fayetteville2 address to the main corporate website, and associating the Fayetteville facility with rainbow imagery.

In a December 29 order, the district court granted the School's request for an audit, but deferred ruling on the remainder of the Third Motion (the "December 29 order"), explaining that it was

> not convinced at this time that [Early Education has] willfully violated the injunction for a third time or that a finding of contempt is again warranted. The Court takes seriously [Early Education's] argument that the remedies [the School] seeks are impossible to provide because the violations cannot be cured to [the School's] satisfaction and [Early Education's] contention that good faith cooperation in curing violations of the injunction has been subverted.

J.A. 653. To that end, the court invoked its broad discretion to craft an appropriate remedy and ordered the appointment of a "temporary, independent auditor [to] help resolve these questions and bring [Early Education's] business activities into compliance with the injunction to the extent that this can reasonably be accomplished." J.A. 653–54. The court ordered Early Education to pay the cost of the audit.

9

Early Education noted a timely appeal. We address the Court's jurisdiction over this interlocutory order below.[4]

## II.

To ensure compliance with its orders, a district court has the inherent authority to hold parties in civil contempt. *Shillitani v. United States*, 384 U.S. 364, 370 (1966); *see Consolidation Coal Co. v. Local 1702, United Mineworkers of Am.*, 683 F.2d 827, 830 (4th Cir. 1982) ("[T]he essence of civil contempt is to coerce future behavior."). That power includes the ability to award damages and attorney's fees to an aggrieved party. *Hutto v. Finney*, 437 U.S. 678, 691 (1978) ("Civil contempt may . . . be punished by a remedial fine, which compensates the party who won the injunction for the effects of his opponent's noncompliance."). A party can be held in civil contempt when there is clear and convincing evidence of four elements:

> (1) the existence of a valid decree of which the alleged contemnor had actual or constructive knowledge; (2) that the decree was in the movant's "favor"; (3) that the alleged contemnor by its conduct violated the terms of the decree, and had knowledge (at least constructive knowledge) of such violations; and (4) that the movant suffered harm as a result.

*United States v. Ali*, 874 F.3d 825, 831 (4th Cir. 2017) (quoting *Ashcraft v. Conoco, Inc.*, 218 F.3d 288, 301 (4th Cir. 2000)).

We review for abuse of discretion the district court's decisions to hold Early Education in contempt and to award damages and attorney's fees to the School. *See In re*

---

[4] The district court has stayed the audit and further proceedings relating to the Third Motion pending this appeal.

10

*Under Seal*, 749 F.3d 276, 285 (4th Cir. 2014). "A district court abuses its discretion by resting its decision on a clearly erroneous finding of a material fact, or by misapprehending the law with respect to underlying issues in litigation." *Scott v. Family Dollar Stores, Inc.*, 733 F.3d 105, 112 (4th Cir. 2013) (internal quotation marks omitted).

A.

With respect to the First and Second Motions, Early Education asserts the district court abused its discretion in holding it in contempt. It does not dispute that the first two elements of contempt are satisfied: the district court entered the consent order and injunction in which Early Education admitted it should be treated as if it had committed common law trademark infringement against the School. It does, however, challenge the third and fourth elements. Specifically, Early Education contends that the district court clearly erred in finding that its conduct violated the injunction. In addition, it argues that the School was not harmed, and thus the district court should not have awarded the School $60,000 in damages or $36,080 in attorney's fees. We address each argument in turn.

1.

Early Education first contends that the district court clearly erred by finding that it knowingly violated the injunction and challenges each violation the district court described in its December 14 order. But to affirm the district court's ruling with respect to both the First and Second Motions, we need only conclude that the court did not clearly err in finding that Early Education violated the injunction in one of the ways alleged in each motion. This is so because a single violation of the injunction is sufficient

to support a finding of contempt. *See In re Under Seal*, 749 F.3d at 293 ("When two independent bases support a district court's contempt order, it is enough for us to find that one of those bases was appropriate."). Having reviewed the record, we conclude the district court did not clearly err in finding multiple violations of the injunction.

In the First Motion, the School asserted that Early Education violated the injunction by using the word "rainbow" in multiple domain names, links, and metatags associated with the Fayetteville facility's stand-alone website. For example, the Fayetteville facility website linked to email addresses that used the word "rainbow"; a "Contact Us" link on the site redirected users to the main corporate website; a pop-up screen on the Fayetteville facility's site asked users to allow the main corporate website to track their location; and the word "rainbow" appeared close to 180 times as a link or tag on the Fayetteville facility website. In the face of this data, Early Education offered general denials, stressing that the School was alleging "hyper-technical alleged violations of the Court's order," J.A. 403, and asserting that any violations were inadvertent. Moreover, Early Education's Director of Communications noted that to address the violations alleged by the School, he had only directed the website vendor to create a new website for the Fayetteville facility and "remove all traces of the name 'Rainbow' and a 'Rainbow design' from" that website. J.A. 307.

But the injunction plainly required Early Education to also stop using the word "rainbow" in connection with the Fayetteville facility. And its internet content provisions specifically required the new stand-alone Fayetteville facility website to be independent from the main corporate website "so that the word 'rainbow' *will not appear* on the

stand-alone web page for Fayetteville Child Care Center, *even as a forwarding tag*. Any such links connecting to the main corporate website for Rainbow Child Care Centers shall connect only to information about Defendants' programs, curricula, and corporate policies." J.A. 78–79 (emphases added). Given the undisputed existence of these violations and their scope, the district court did not clearly err in concluding that the violations had occurred and had not been adequately corrected. Nor did it clearly err in finding Early Education responsible for knowing the contents of its own website for purposes of establishing the requisite knowledge of the violations.

The district court also did not clearly err in finding that Early Education violated the injunction by inviting Fayetteville metropolitan area residents to the summer social. Notably, Early Education cannot dispute that the mailer in fact solicited Fayetteville area residents, that it advertised "Rainbow Child Care Centers," contained a rainbow image, and directed residents to the corporate website to locate the "nearest school." *See* J.A. 245. Instead, it argues it did not violate the injunction because the mailer did not specifically identify the Fayetteville facility and any violation was inadvertent. That position ignores that Early Education directly solicited Fayetteville residents. The injunction prohibited Early Education from "doing business as 'Rainbow Child Care Center'" in that region, and it prohibited it from using the word "rainbow" and rainbow imagery "in connection with their business in the Fayetteville metropolitan area." J.A. 77–78. That language is broader than Early Education contends, and the district court did not clearly err in determining that the invitation violated the injunction.

13

The district court thus did not clearly err in finding that Early Education had violated the injunction as to each of the Motions.

2.

Next, Early Education challenges the district court's determination that Early Education's violations harmed the School. The district court relied on two grounds: first, that "[h]arm is presumed to result from trademark infringement," and second, that the parties had "expressly contemplated that harm would result from a violation of [the] consent injunction" and agreed to liquidated damages. *Rainbow Sch.*, 2016 WL 7243538, at *3.

Early Education's argument lacks merit for the simple reason that it is bound by the settlement agreement wherein it consented to judgment being entered "as though the allegations of trademark infringement had been proven at trial." J.A. 77. That prior judgment includes a finding that Early Education's conduct—the very conduct it was enjoined from engaging in thereafter—harmed the School. *See Scotts Co. v. United Indus.*, 315 F.3d 264, 273 (4th Cir. 2002) (discussing the irreparable harm component of trademark infringement cases, which flows from an established likelihood of confusion and mark dilution). Although the settlement agreement's liquidated damages provision was not specifically incorporated into the consent judgment and permanent injunction, it nonetheless provided the district court with relevant information concerning the parties' agreement in the event Early Education violated the injunction. In the settlement agreement, Early Education recognized that its violation of any of the provisions of the injunction "could cause harm to [the School's] business," and that the School could "seek

14

a court order requiring compliance with the permanent injunction" should Early Education fail to cure any violations after receiving notice and an opportunity to cure. J.A. 186. That is exactly what the School did here. Early Education further agreed that if a court found that it had violated "*any* of the requirements of the permanent injunction . . . and ha[d] failed to cure the violation within the time frames provided[,] then [it would be] liable to [the School] for liquidated damages in the amount of $30,000.00." J.A. 186 (emphasis added). By its own terms, this provision provided a factual foundation for the district court to conclude that violations of the injunction proved sufficient likelihood of harm to the School for purposes of compelling Early Education's compliance. And, as discussed, coercing compliance is the precise objective of a civil contempt order. Contrary to Early Education's argument, the district court did not relieve the School of its burden of proving harm. Instead, it simply held Early Education to its own agreement.

Because we reject Early Education's two arguments contesting the finding of contempt, we conclude the district court did not abuse its discretion in holding Early Education in contempt based on its violations of the permanent injunction.

3.

Apart from the finding of contempt, Early Education also challenges the district court's award of $60,000 in damages to the School. Consistent with the discretion afforded to courts to hold parties in contempt in the first instance, district courts also enjoy wide latitude in imposing an award that is both compensatory and incentivizing. *See Consolidation Coal*, 683 F.2d at 829 ("Although a fine for civil contempt does have a

15

compensatory aspect to it, the fines are designed primarily to coerce behavior. To give a court the power to issue injunctive relief without the power to fine those individuals who disobey the court order is to give a court the power to grant a remedy without effective means to enforce it."). Although the district court could have used other measures to calculate an appropriate award for Early Education's violations, it chose the most natural: the Parties' settlement agreement. There, the Parties agreed that if a court determined Early Education had violated "*any* of the requirements" of the injunction and failed to cure the violations, Early Education would be "liable to [the School] for liquidated damages in the amount of $30,000.00." J.A. 186 (emphasis added).

The district court found that Early Education committed multiple violations of the injunction, a finding that was not clearly erroneous. Given that the settlement agreement contemplates that Early Education would be liable in the amount of $30,000 for *any* violation of the injunction, it follows that the district court did not abuse its discretion in deciding to award $60,000 upon finding at least two separate violations. That amount both compensates the School for its damages, which the Parties recognized would "be inherently difficult to ascertain with certainty, particularly as those damages relate to [the School's] reputation and current and future customer relationships," J.A. 187, and incentivizes Early Education's prompt compliance with the injunction. As the School recognized during oral argument, there would be a limit to awarding $30,000 per violation, but that is not what the district court did, nor is it what the School sought. At this juncture, it is sufficient for us to conclude the district court did not abuse its discretion in awarding $60,000 based on the record before it.

16

4.

Early Education also argues that the district court abused its discretion in awarding more than $36,000 in attorney's fees because the School did not submit adequate documentation to support such an award. Specifically, Early Education contends that the School's supporting documentation improperly "lumped" together tasks, making it impossible to determine how much time was spent on various tasks. Early Education's sole legal support for its argument is a district court decision awarding a lower amount of fees than requested because the firm "lumped" several tasks under a single entry without identifying the length of each task. *See JP ex rel. Peterson v. Cty. Sch. Bd. of Hanover Cty.*, 641 F. Supp. 2d 499, 519 (E.D. Va. 2009).

The School sought over $46,000 in fees, which the district court concluded was an unreasonable amount. It noted that the School's lead attorney admitted the amount was based on a higher hourly rate than she usually charged and which included a penalty assessed to clients who did not consistently make payments. Based on its familiarity with the region's customary hourly rates, the district court first adjusted the hourly rates for the attorneys and paralegals who worked on the case. The district court then reviewed the evidence supporting the number of hours billed and the work performed, finding that the number was "reasonable" and "sufficient[ly] particulari[zed]." J.A. 628. Last, the court noted the nature and extent of the litigation necessary to stop Early Education's "willful violations of court orders." J.A. 628. It concluded these factors supported the fee award.

District courts have "considerable discretion" in awarding attorney's fees, and we "must not overturn an award . . . unless it is clearly wrong." *Colonial Williamsburg*

17

*Found. v. Kittinger Co.*, 38 F.3d 133, 138 (4th Cir. 1994). In arriving at an appropriate award, the district court must determine "the time and labor expended and the customary fees for like work" and then "consider whether to adjust the fee on the basis of other factors, briefly explaining any adjustment." *Id.*

We have reviewed the record and conclude the district court's fee award was not based on clearly incorrect evidence concerning the nature of the work performed. To be sure, this Court has previously cautioned against generalized billing that inadequately describes the tasks performed within each block of time for which a party seeks fees. *See, e.g.*, *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 179–80 (4th Cir. 1994). But the explanations supporting the School's fee award do not contain the sort of problematic vagueness and generalities that engender the concern that a fee award lacks adequate support. Notably, Early Education faults the School for submitting initial submissions with lumped tasks but overlooks that the School supplemented its responses below. Moreover, in many cases, Early Education criticizes entries that contain more than one task without considering that the additional descriptions are just that—added information about a single, overarching task. This practice is far removed from the sort of vague entry that lumps "clerical tasks with tasks requiring attorney judgment," which concerned the district court in *Peterson*. *See* 641 F. Supp. 2d at 519. On this record, we cannot conclude that the district court abused its discretion in determining the School's fee award.

* * * *

For all these reasons, the district court did not abuse its discretion in holding Early Education in contempt based on the conduct at issue in the School's First and Second

18

Motions, or in awarding $60,000 to the School for those violations and $36,080 in attorney's fees. We therefore affirm the district court's December 14, 2016 order.[5]

B.

We next turn to Early Education's challenge to the district court's December 29, 2016, order deferring judgment on the School's Third Motion for contempt, but ordering Early Education to undergo an audit. The order is interlocutory, as the merits of the Motion remain pending before the district court. *See Gelboim v. Bank of Am. Corp.*, 135 S. Ct. 897, 902 (2015) ("A 'final decision' [under 28 U.S.C. § 1291] is one by which a district court disassociates itself from a case."). And, as a federal appellate court, we "may exercise jurisdiction only over final orders and certain interlocutory and collateral orders." *Goode v. Cent. Va. Legal Aid Soc'y, Inc.*, 807 F.3d 619, 623 (4th Cir. 2015) (internal citation omitted). Unless the December 29 order falls under one of the recognized exceptions to the final decision rule, we lack jurisdiction.

Early Education posits that we have jurisdiction under 28 U.S.C. § 1292(a)(1), which allows the Court to consider interlocutory orders "granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions." We disagree. Although the December 29 order arises from a motion to compel enforcement of an existing permanent injunction, it does not alter the already-existing injunction and therefore does not grant, continue, modify, or dissolve the injunction.

---

[5] Early Education has raised additional related arguments in favor of reversal, which we have also reviewed and found to be meritless.

Early Education next posits that we have jurisdiction under the collateral order doctrine or by means of pendent appellate jurisdiction. The collateral order doctrine allows a party to immediately appeal non-final orders "because they are conclusive, resolve important questions separate from the merits, and are effectively unreviewable on appeal from the final judgment in the underlying action." *Rux v. Republic of Sudan*, 461 F.3d 461, 475 (4th Cir. 2006) (internal quotation marks omitted). The issues Early Education raises do not fall within this framework. Early Education asserts that it is being forced to pay for an audit, but nothing in the district court's order suggests that this initial assessment is a final determination about which party will ultimately bear that expense. As the School acknowledges, if the auditor determines there is no ongoing violation, the district court is free to order the School to bear the audit's cost as part of the final order. And because we have concluded that the district court did not abuse its discretion in previously holding Early Education in contempt, that foundation for proceedings on the Third Motion is not in question. In sum, the December 29 order does not resolve matters separate from the merits of whether Early Education remains in contempt (either because of new or continuing violations), and the issues Early Education challenges now will be reviewable on appeal from the court's final judgment. As such, the collateral order doctrine does not provide us with jurisdiction.

Pendent appellate jurisdiction is a "judicially-created, discretionary exception to the final judgment requirement" that allows the Court to "retain the discretion to review issues that are not otherwise subject to immediate appeal when such issues are so interconnected with immediately appealable issues that they warrant concurrent review."

20

*Id.* It is available only (1) when an issue is 'inextricably intertwined' with a question that is the proper subject of an immediate appeal; or (2) when review of a jurisdictionally insufficient issue is 'necessary to ensure meaningful review' of an immediately appealable issue." *Id.* We decline to exercise this discretionary jurisdiction here. The question of whether Early Education should initially pay for an audit is neither inextricably linked nor a necessary precursor to the issues presented in the appeal from the district court's prior order, which made a determination of contempt and had nothing to do with paying for an audit.

Because we lack appellate jurisdiction over the December 29 order, we dismiss that portion of Early Education's appeal.

III.

For the reasons set out above, we affirm the district court's December 14, 2016, order finding Early Education in contempt for the violations set out in the School's First and Second Motions and awarding the School damages and attorney's fees. We dismiss for lack of jurisdiction Early Education's appeal of the district court's December 29, 2016, order relating to the Third Motion.

*AFFIRMED IN PART*
*AND DISMISSED IN PART*