**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 18-1655**

_____

AKIRA TECHNOLOGIES, INC.,

              Plaintiff – Appellee,

        v.

CONCEPTANT, INC.; NUCOGNITION, INC.; JOSHUA PHIPPS; ANDREY MIKHALCHUK; LISA HOULE,

              Defendants – Appellants,

    and

CHIRON SOLUTIONS, INC.; DAVID WOOD; SHANNON MUNLEY,

              Defendants.

_____

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Liam O'Grady, District Judge. (1:17-cv-00412-LO-IDD)

_____

Argued: March 19, 2019                          Decided: May 8, 2019

_____

Before GREGORY, Chief Judge, DIAZ, and HARRIS, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

Peter Charles Cohen, CHARLSON BREDEHOFT COHEN & BROWN, P.C., Reston, Virginia, for Appellant. Christopher Shiplett, RANDOLPH LAW PLLC, Falls Church, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Appellants Conceptant, Inc., NuCognition, Inc., Joshua Phipps, Andrey Mikhalchuk, and Lisa Houle appeal the district court's order denying their motion for attorney's fees against Appellee Akira Technologies, Inc. Because the district court committed no clear error in denying the motion on the basis that Akira did not act in bad faith, we affirm the judgment below.

I.

Akira is a technology services provider focused on federal government contracts, and the United States Food and Drug Administration ("FDA") is its primary customer. Between 2011 and 2012, Akira hired Phipps, Mikhalchuk, and Houle and placed them in high-level management and technical roles. During their employment with Akira, Phipps, Houle, and Mikhalchuk founded Conceptant and NuCognition as technology services companies in the federal government contracts market. In July of 2016, Akira's CEO received notice that Conceptant was bidding on an FDA project when a third party accidentally copied him on an email to Phipps concerning Conceptant's bid. Although Akira's CEO confronted Phipps, Mikhalchuk, and Houle to request that they not compete against Akira, he later discovered that Conceptant bid on and received at least one FDA contract. Akira's CEO, aware of the opportunity to bid on FDA contracts, nonetheless chose not to bid on that particular contract.

Akira filed suit seeking damages and an injunction preventing Appellants from using any Akira trade secrets. The company brought these claims under the Defend

2

Trade Secrets Act ("DTSA") and the Virginia Uniform Trade Secrets Act ("VUTSA"). *See* 18 U.S.C. § 1836 *et seq.*; Va. Code Ann. § 59.1-336 to 59.1-343. Akira also filed a claim for tortious interference with a contract and business expectancy under Virginia law. The district court granted Appellants' motion to dismiss, and Akira filed an amended complaint. Appellants then filed another motion to dismiss, which the district court denied.

During discovery, Akira admitted that it had not created prototypes related to the trade secrets claims. Other evidence was uncovered that supported these claims, however.

About one month after the close of discovery, Akira moved to amend the complaint again, this time to dismiss the trade secrets claims and tortious interference claim. Akira sought to continue pressing its remaining claims in state court. The district court granted the motion to amend and dismissed the complaint.

Following this order, Appellants filed a motion for attorney's fees under the DTSA, the VUTSA, Federal Rule of Civil Procedure 11, 28 U.S.C. § 1927, and the inherent authority of the court. After briefing, the district court issued an order denying the motion for attorney's fees. The court found that the record demonstrated an "objective good faith basis" for pleading the trade secrets claims and tortious interference claim. Applying the clear-and-convincing-evidence standard, the district court specifically found that "[n]othing in the extensive record suggests that [the trade secrets claims] were brought in bad faith" and that the record demonstrated an "objective good faith basis" for pleading the claims.

3

## II.

We review the denial of a motion for attorney's fees for abuse of discretion. *Rainbow Sch., Inc. v. Rainbow Early Educ. Holding, LLC*, 887 F.3d 610, 617 (4th Cir. 2018) (noting that district courts enjoy broad discretion in awarding attorney's fees). A district court abuses its discretion by "resting its decision on a clearly erroneous finding of a material fact." *Scott v. Family Dollar Stores, Inc.*, 733 F.3d 105, 112 (4th Cir. 2013) (internal quotation marks omitted); *see also Hyatt v. Shalala*, 6 F.3d 250, 255 (4th Cir. 1993) (reviewing for clear error a trial court's determination of bad faith in the attorney's fees context).

## III.

In arguing for attorney's fee sanctions, Appellants contend that Akira brought its three claims in bad faith. We begin our analysis with the DTSA and VUTSA claims and conclude with the tortious interference claim.

### A.

Appellants seek attorney's fee sanctions for the DTSA and VUTSA claims under five authorities: (1) the DTSA, (2) the VUTSA, (3) Federal Rule of Civil Procedure 11, (4) 28 U.S.C. § 1927, and (5) the inherent authority of the court.

As an initial matter, we can quickly dispose of Appellants' arguments for sanctions under Rule 11 and 28 U.S.C. § 1927. Rule 11 by its terms requires a movant to file separately any motion for sanctions and mandates that the movant provide the other party 21 days to respond before filing or presenting the motion to the court. Fed. R. Civ.

4

P. 11(c). Because Appellants fulfilled neither requirement, Rule 11 cannot provide a basis for sanctions.

Appellants' argument under 28 U.S.C. § 1927 fares no better. That section provides that attorney's fees may be awarded when one party "multiplies the proceedings . . . unreasonably and vexatiously" through conduct such as misrepresentations of evidence causing unnecessary litigation and the filing of unsupported motions. 28 U.S.C. § 1927; *see also Six v. Generations Fed. Credit Union*, 891 F.3d 508, 521 (4th Cir. 2018). Here, Akira filed only one amended complaint, completed discovery within the discovery period, and promptly filed a motion to amend to dismiss claims after discovery ended. This activity was neither unreasonable nor vexatious, and thus § 1927 can afford no relief.

That leaves the DTSA, the VUTSA, and the inherent authority of the court. Each of these bases for relief requires a finding of bad faith. *See* 18 U.S.C. § 1836(b)(3)(D) (stating that a court may award attorney's fees if "a claim of the misappropriation is made in bad faith"); Va. Code § 59.1-338.1 (same); *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45 (1991) (explaining that a court may assess attorney's fees under its inherent authority when a party has "acted in bad faith"). Such a finding requires, at a minimum, that the plaintiff's "claim had no chance of success under existing law." *Tullidge v. Bd. of Supervisors of Augusta Cty.*, 391 S.E.2d 288, 290 (Va. 1990) (applying VUTSA).

The district court determined that Akira did not act in bad faith in bringing the DTSA and VUTSA claims because the evidence showed that it had at least some chance of success on these claims. *Cf. Trident Perfusion Assocs., Inc. v. Lesnoff*, No. 96-2242,

5

1997 WL 528321, at *1, *3 (4th Cir. Aug. 28, 1997) (affirming the district court's finding of bad faith under the VUTSA where the appellant had no "chance of success" because it presented "no evidence . . . showing any contact" between the defendant-appellees and the party the appellant alleged to be the competitor receiving trade secrets). In arguing to the contrary, Appellants contend primarily that Akira had no chance of success because it admitted that it had no prototypes of the trade secrets. Both the DTSA and VUTSA define trade secrets broadly, however, and thus Akira's admission does not by itself establish that it had no chance of success. *See* 18 U.S.C. § 1839(3) (defining trade secrets to include "all forms and types of . . . information including patterns, plans . . . designs . . . methods, techniques, processes, [and] procedures" appropriately protected and valuable); Va. Code § 59.1-336 (defining trade secrets as "information, including but not limited to, a pattern . . . method, technique, or process" properly protected and valuable). Because the record evidence showed that Akira had at least some chance of success notwithstanding the lack of prototypes, the district court did not clearly err in finding no bad faith.

B.

Appellants also argue that Akira brought the claim for tortious interference with a contract and business expectancy in bad faith. The district court found otherwise. We agree.

A claim for tortious interference with a contract and business expectancy requires the existence of a contract or business expectancy, knowledge by the defendant of that business expectancy, intentional interference causing a breach or termination of the

6

expectancy, and damages resulting from the interference of a defendant. *Rappahannock Pistol & Rifle Club, Inc. v. Bennett*, 546 S.E.2d 440, 443 (Va. 2001). For this claim, Appellants may seek attorney's fee sanctions only under the inherent authority of the court. They must therefore show that Akira acted in bad faith. *See Chambers*, 501 U.S. at 45–46.

In the complaint, Akira alleged that Appellants committed tortious interference by interfering with a potential FDA contract bid. Appellants argue that Akira brought this claim in bad faith because Akira had no chance of success given that its CEO admitted that he was aware of the potential bid opportunity and yet chose not to bid on the project. This admission meant that no damages could be attributed to Appellants, an element of a tortious interference claim. *See Bennett*, 546 S.E.2d at 443. For this reason, Appellants assert, the claim was filed in bad faith.

It is true that the record contains evidence that Akira knew of but did not pursue the FDA bid. And yet the amended complaint included within the tortious interference claim not only the FDA bid but also "other federal work [diverted] to Conceptant." That the complaint swept more broadly than only the FDA bid indicates that Akira—at the pleading stage at least—had some chance of success on the tortious interference claim because that claim could reasonably encompass other alleged tortious interference aside from the incident involving the FDA bid. The tortious interference claim survived a motion to dismiss, moreover, and was promptly dropped after discovery yielded no additional evidence on the FDA bid or the diversion of any other federal work away from

7

Akira.  On these facts, the district court found no bad faith, and it did not clearly err in doing so.

## IV.

Finally, Appellants argue that the district court erred by applying a clear-and-convincing standard of proof in analyzing the bad-faith issue.  We need not address this argument, however, because the district court's findings—that "[n]othing in the extensive record" at summary judgment showed bad faith and that nothing raised in the subsequent motion for attorney's fees "alter[ed] that conclusion"—would satisfy the preponderance of the evidence standard.

## V.

Because we find no abuse of discretion, we affirm the district court's denial of Appellants' motion for attorney's fees.

*AFFIRMED*