In the

# United States Court of Appeals
### For the Seventh Circuit

No. 07-1973

ALEX D. MOGLIA, Trustee for
Outboard Marine Corporation and
related debtors,

*Plaintiff-Appellant,*

*v.*

PACIFIC EMPLOYERS INSURANCE COMPANY,
INDEMNITY INSURANCE COMPANY OF
NORTH AMERICA, and ACE AMERICAN
INSURANCE COMPANY,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 05 C 1366—**Milton I. Shadur**, *Judge*.

ARGUED OCTOBER 24, 2008—DECIDED NOVEMBER 6, 2008

Before EASTERBROOK, *Chief Judge*, and POSNER and
ROVNER, *Circuit Judges*.

EASTERBROOK, *Chief Judge*. Pacific Employers and two
other insurers issued policies to Outboard Marine Corpora-

tion covering workers' compensation, automobile liability, and general liability. These policies (which the parties call "program agreements") require Outboard Marine to post irrevocable letters of credit as security for its obligations to pay premiums and reimburse the insurers for specified outlays.

After Outboard Marine entered proceedings under Chapter 7 of the Bankruptcy Code, its Trustee filed an adversary action against the insurers. The Trustee contended that the letters of credit give the insurers more security than they are entitled to, and he asked the bankruptcy court to order the insurers to release these letters to the extent of the excess. The insurers denied that the letters of credit give them too much security, and they also invoked clauses in each policy that require Outboard Marine to arbitrate disputes arising out of the policies. The Trustee resisted, but in October 2003 Bankruptcy Judge Squires granted the insurers' motions to stay the adversary proceeding and compel arbitration.

Five years have gone by, and the arbitration has yet to get under way. The Trustee decided to undermine the bankruptcy court's order by refusing to cooperate. The arbitrators saw that the Trustee was being difficult, and they thought it prudent to protect themselves by requiring the parties to sign a hold-harmless agreement that not only forbids suit against the arbitrators (a contractual supplement to the immunity that arbitrators enjoy at common law, see *Tamari v. Conrad*, 552 F.2d 778, 780 (7th Cir. 1977)) but also requires indemnification of arbitrators sued in the teeth of that immunity, should they

incur legal expenses to defend themselves. Rules of the American Arbitration Association, under which the arbitration was being conducted, allow arbitrators to require the parties to make hold-harmless promises.

The insurers signed; the Trustee refused. He asserted that the indemnity clause would create an unwarranted contingent claim against the bankruptcy estate. The Trustee then asked Judge Squires to rescind the arbitration order, which he did, stating that "if the trustee doesn't want to grant [indemnity] for the exercise of his business judgment, . . . that is, I think, a matter within his discretion." The bankruptcy judge did not cite any legal authority for the proposition that a Trustee may thwart arbitration by unilateral refusal to cooperate.

The insurers appealed to the district court, which reversed. 365 B.R. 863 (N.D. Ill. 2007). The district judge explained that Outboard Marine had promised to arbitrate and that the Trustee must take any steps required to fulfill that promise. The district judge directed the Trustee to sign the hold-harmless agreement and proceed with the arbitration; the matter was remanded to the bankruptcy court to be held in abeyance until the arbitration had been completed.

In this court the Trustee insists that the hold-harmless agreement would create a contingent claim against the estate. Why that should matter is obscure. The obligation to pay the arbitrators creates a direct claim against the estate; why should a contingent claim arising from the same pre-bankruptcy contract be worse? The size of this claim surely is small: Unless someone sues the arbitrators

there will be no outlay. The probability of suit is minuscule, and the legal fees needed to fend off frivolous litigation also are small. It is hard to see how the actuarial value of this contingent claim could exceed $100. Yet the Trustee has spent many thousands of dollars in legal fees, and delayed this case by five years, to avoid a trivial chance of exposure to a modest claim. That's a sign of irrationality; no wonder the arbitrators thought that they needed extra protection.

The Trustee also maintains that the policies, as executory contracts, were automatically rejected under 11 U.S.C. §365(d)(1) when they were not assumed within 60 days after the bankruptcy began, and that rejection enables the estate to avoid all of Outboard Marine's promises, including the promise to arbitrate. The insurers acknowledge that this is so if the policies have been rejected, but they interpret the Trustee's argument as an attempt to avoid only Outboard Marine's obligations under the policies, while holding the insurers to their own—in other words, to get back the security while leaving the insurers exposed to future claims for indemnity.

If the policies have been rejected, then they are cancelled. There will be no future indemnity, any more than a tenant could "reject" a lease while continuing to occupy the premises rent-free. A Trustee can't have things both ways. After rejection, the bankruptcy court rather than an arbitrator should settle accounts between Outboard Marine and the insurers—for rejection does not avoid the debtor's obligations but simply replaces specific

performance with damages. See Douglas G. Baird, *Elements of Bankruptcy* 130–40 (4th ed. 2006); Michael T. Andrew, *Executory Contracts in Bankruptcy: Understanding "Rejection"*, 59 U. Colo. L. Rev. 845 (1988). Damages then may be written down according to their priority *vis-à-vis* other claims against the estate.

Whether these policies have been rejected, or the arbitration clause otherwise avoided, is a question that we may decide only if the appeal is within our jurisdiction. And it is not. The district judge remanded for further proceedings. That makes the decision interlocutory and non-appealable. See *In re Comdisco, Inc.*, 538 F.3d 647 (7th Cir. 2008).

This conclusion is fortified by the nature of the remand: for a stay of proceedings pending arbitration. A pro-arbitration decision, coupled with a stay (rather than a dismissal) of the suit, is not appealable. See *Green Tree Financial Corp. v. Randolph*, 531 U.S. 79, 87 n.2 (2000). Indeed, 9 U.S.C. §16(b) positively *forbids* appeal. It says that "an appeal may not be taken" from an order staying litigation in favor of arbitration "[e]xcept as otherwise provided in section 1292(b) of title 28", which allows appeal of controlling questions by joint permission of the district and appellate courts. Other possible sources of appellate jurisdiction, including 28 U.S.C. §158(d) (final decisions in bankruptcy), §1291 (final decisions in civil suits), and §1292(a) (injunctions), are superseded for orders to arbitrate.

According to the Trustee, the district judge's order to sign the hold-harmless promise is an injunction, which

may be appealed under §1292(a); the Trustee contends that we may review the arbitration order under the doctrine of "pendent appellate jurisdiction." This line of argument is full of holes.

The order to sign the hold-harmless promise is no more an "injunction" than is the order to arbitrate itself. Judges routinely direct parties to do things—provide discovery, make witnesses available for medical exams, pay arbitrators, draw up plans for compliance with some legal obligation—without thereby entering injunctions that may be immediately appealed.

An injunction is an order of specific performance on the merits, a remedy for a legal wrong. An order "to do" in the course of litigation is not an injunction unless it effectively resolves the merits in a way that would escape review later. See, e.g., *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 279 (1988); *In re Springfield*, 818 F.2d 565 (7th Cir. 1987). Treating case-management orders as injunctions would permit not one appeal per suit, but dozens, and make a mockery of the final-decision requirement. It would allow litigation to be dragged out interminably, as this has been—for although Outboard Marine entered bankruptcy in 2000, resolution of the parties' substantive dispute has yet to begin! Arbitration is supposed to be a quick and cheap substitute for litigation (gaining the benefits of expertise in the process, since many arbitrators are specialists), yet the Trustee has succeeded in multiplying the time and expense required.

If the order to sign *were* an injunction, still §16(b) would forbid appeal. The only exception to §16(b) is an appeal

by permission under §1292(b), and that section does not help the Trustee. (The district judge did not certify his order for appeal under §1292(b).) As for the collateral-order doctrine, see *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541 (1949): this elaborates on the phrase "final decision" in 28 U.S.C. §1291, and §16(b) prevents litigants from using §1291 to get review of orders staying litigation in favor of arbitration.

Even if all of this were wrong, the doctrine of "pendent appellate jurisdiction" would not permit us to review the order to arbitrate. Section 16(b) blocks resort to that doctrine, in common with all sources of appellate jurisdiction other than §1292(b). So we held in *IDS Life Insurance Co. v. SunAmerica, Inc.*, 103 F.3d 524, 528 (7th Cir. 1996). What's more, pendent appellate jurisdiction is a discretionary doctrine, and judges ought not use discretion to get 'round statutes such as §16(b). Although the Trustee is right to say that *Swint v. Chambers County Commission*, 514 U.S. 35, 43–51 (1995), left open the possibility that appellate courts might assert pendent appellate jurisdiction, "the Court made clear that only the most extraordinary circumstances could justify the use of whatever power the courts of appeals possess—and that even when circumstances are exceptional the availability of pendent appellate jurisdiction is doubtful." *McCarter v. Retirement Plan for American Family Insurance Group*, 540 F.3d 649, 653 (7th Cir. 2008).

Since *Swint* the Justices have approved the use of pendent appellate jurisdiction only once. They deemed the President's status as a defendant a compelling circum-

stance. See *Clinton v. Jones*, 520 U.S. 681, 707 n.41 (1997). But the Trustee of Outboard Marine Corporation is not the President, and there is nothing extraordinary about this commercial litigation. Pendent appellate jurisdiction would not be available even if §16(b) were not an independent bar to its use. Although *National Railroad Passenger Corp. v. Expresstrak, LLC*, 330 F.3d 523 (D.C. Cir. 2003), and *Quackenbush v. Allstate Insurance Co.*, 121 F.3d 1372 (9th Cir. 1997), invoke "pendent appellate jurisdiction" to review mundane arbitration orders, those decisions go in the teeth of both *Swint* and §16(b). We shall adhere to *IDS Life Insurance*.

It is long past time to carry through with the arbitration that was ordered in 2003. Whether or not the contract has been rejected, the Trustee must stop dragging his heels. If the arbitration ends in the insurers' favor, the Trustee will be entitled to renew in the bankruptcy court his argument that the policies have been rejected. The Trustee's intransigence has greatly increased the insurers' costs of litigation. The policies contain fee-shifting clauses. The bankruptcy judge may think it prudent to consider, once the arbitration has been completed, whether any attorneys' fees awarded under these policies should be borne by the Trustee personally rather than by the creditors of Outboard Marine. See *Maxwell v. KPMG LLP*, 520 F.3d 713, 718–19 (7th Cir. 2008).

The appeal is dismissed for want of jurisdiction.