**PUBLISHED**

**UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT**

─────────────

**No. 21-1058**

─────────────

WILLIAM T. LYONS, Individually and on Behalf of Others Similarly Situated,

Plaintiff - Appellee,

v.

PNC BANK, National Association,

Defendant - Appellant.

───────────────────

CONSUMER FINANCIAL PROTECTION BUREAU,

Amicus Curiae.

─────────────

**No. 21-1289**

─────────────

WILLIAM T. LYONS, Individually and on Behalf of Others Similarly Situated,

Plaintiff – Appellant,

v.

PNC BANK, National Association,

Defendant – Appellee.

───────────────────

CONSUMER FINANCIAL PROTECTION BUREAU,

Amicus Curiae.

Appeal from the United States District Court for the District of Maryland, at Baltimore. Stephanie A. Gallagher, District Judge. (1:20-cv-02234-SAG)

Argued: October 28, 2021                    Decided: February 15, 2022

Before GREGORY, Chief Judge, QUATTLEBAUM, Circuit Judge, and FLOYD, Senior Judge.

Affirmed in part, reversed in part by published opinion. Chief Judge Gregory wrote the majority opinion, in which Senior Judge Floyd joined. Judge Quattlebaum wrote a separate opinion concurring in part and dissenting in part.

**ARGUED:** Daniel J. Tobin, BALLARD SPAHR LLP, Washington, D.C., for Appellant/Cross-Appellee. Ellen Louise Noble, PUBLIC JUSTICE, Washington, D.C., for Appellee/Cross-Appellant. Kevin E. Friedl, CONSUMER FINANCIAL PROTECTION BUREAU, Washington, D.C., for Amicus Curiae. **ON BRIEF:** Matthew D. Lamb, BALLARD SPAHR LLP, Washington, D.C., for Appellant/Cross-Appellee. Scott C. Borison, BORISON FIRM LLC, San Mateo, California; Phillip R. Robinson, CONSUMER LAW CENTER LLC, Silver Spring, Maryland; Karla Gilbride, PUBLIC JUSTICE, Washington, D.C., for Appellee/Cross-Appellant. Stephen Van Meter, Acting General Counsel, John R. Coleman, Deputy General Counsel, Steven Y. Bressler, Assistant General Counsel, CONSUMER FINANCIAL PROTECTION BUREAU, Washington, D.C., for Amicus Curiae.

GREGORY, Chief Judge:

William Lyons, Jr. filed suit against PNC Bank, N.A., alleging violations of the Truth in Lending Act ("TILA") related to PNC's set-off of funds from two of Mr. Lyons's deposit accounts to pay the outstanding balance on a Home Equity Line of Credit ("HELOC"). PNC moved to compel arbitration of the dispute based on an arbitration provision in the parties' agreement applicable to the two deposit accounts, and the district court granted the motion as to one account and denied the motion as to the other account.

We find that a provision of the Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank Act") that amends TILA prohibits consumer agreements related to residential mortgage loans from requiring the arbitration of claims. Because we find that this provision precludes arbitration of Mr. Lyons's claims related to both of his deposit accounts, we affirm in part and reverse in part.

I.

Mr. Lyons opened a HELOC with National City Bank on February 4, 2005. J.A. 32–33. To do so, he signed an Equity Reserve Agreement that did not contain an arbitration provision. J.A. 80–84. Five years later, on May 3, 2010, Mr. Lyons opened three deposit accounts at PNC Bank.[1] J.A. 32. One of those deposit accounts was an account ending 2553 ("2010 Account"). J.A. 34, 44. In opening the 2010 Account, Mr. Lyons signed a document that stated he was "bound by the terms and conditions of PNC Bank's Account

---

[1] PNC Bank merged with National City Bank in November 2009, and all parties agree that PNC is the successor-in-interest to National City.

3

Agreement for Checking Accounts and Saving Accounts" ("2010 Account Agreement").

J.A. 32, 44. The 2010 Account Agreement included a provision authorizing PNC to set off funds from the account to pay "[a]ny loans, overdrafts, obligations or other indebtedness . . . now or hereafter owing to us by you." J.A. 176. It also included a clause allowing PNC to amend the Account Agreement and explaining the procedures it must follow to do so.[2] *See* J.A. 177.

In 2013, PNC added an arbitration clause[3] to the Account Agreement. J.A. 160, 211–13. The amended version of the Account Agreement ("2013 Account Agreement") stated that it took effect on February 1, 2013, but customers were given forty-five days to opt out of the arbitration provision. J.A. 199, 211–12. PNC kept track of the opt-out deadline for each customer, and its records show that Mr. Lyons had until June 11, 2013, to opt out of the arbitration provision. J.A. 161.

---

[2] The provision states in relevant part:

> We reserve the right to amend this Agreement . . . from time to time. Unless such change is favorable to you or is required by an emergency situation . . . , an amendment will become effective 30 days (or such later time if required by law) after notice of the amendment is posted in our branches, *or by such other method of notice as we may deem appropriate or as may be specifically required by applicable law*.

J.A. 177 (emphasis added).

[3] The relevant arbitration clause states:

> Under the terms of this Arbitration Provision . . . , Claims (as defined below) will be resolved by individual (and not class-wide) binding arbitration in accordance with the terms specified herein, if you or we elect it.

J.A. 211.

Mr. Lyons opened another deposit account with PNC Bank on June 6, 2014 ("2014 Account")[4] and again agreed to be "bound by the terms and conditions" of the 2014 version of the Account Agreement, which included the same arbitration clause as in the 2013 version. J.A. 162. Mr. Lyons was again provided an opportunity to opt out of the arbitration provision and did not. *Id.*

Mr. Lyons's HELOC ended on February 4, 2015, as expected, but he did not finish paying off the credit until June 17, 2020. J.A. 33–34. On September 26, 2019, PNC applied a set-off of $1,396.97 from Mr. Lyons's 2010 Account to pay the overdue HELOC payment. J.A. 17, 34. On February 26, 2020, PNC applied another set-off of $1,589 from the 2014 Account, which was also used to make a payment on the HELOC. J.A. 18; 23–25; 35.

Mr. Lyons filed suit against PNC in Circuit Court in June 2020 raising claims under TILA.[5] J.A. 12–29. PNC removed the suit to federal court and filed a motion to compel arbitration. J.A. 90–106. In its filings, PNC discussed only the most recent, August 11, 2019, version of the Account Agreement. *Id.*; J.A. 30–89. On November 15, 2020, after the matter was fully briefed, the district court requested supplemental briefing on two questions: "(1) whether the Arbitration Clause existing in the 2019 version of the Account Agreement also existed in the Account Agreement at the time [Mr. Lyons] opened the

---

[4] The district court refers to this account as the "2016 deposit account" because PNC initially incorrectly informed the court that the account was opened on July 6, 2016. The differing dates, however, are not material to this appeal.

[5] Mr. Lyons also raised claims under the Real Estate Settlement Procedures Act but those are not at issue in this appeal. J.A. 25–26.

5

accounts in 2010 and 2016; and (2) if not, whether [Mr. Lyons] can be considered bound to an Arbitration Clause added to the Account Agreement after the accounts were opened." J.A. 141; *see also* J.A. 107–22; 123–40. Both parties submitted supplemental memoranda simultaneously on December 1, 2020. J.A. 143–280; 281–85. PNC's supplemental memorandum described for the first time the various versions of the Account Agreement. J.A. 143–55.

On January 6, 2021, the district court issued a memorandum opinion granting in part and denying in part PNC's motion to compel arbitration. J.A. 290–96; 302. The court found that amendments made by the Dodd-Frank Act to TILA barred arbitration of Mr. Lyons's claims related to the 2014 Account because it was opened after the effective date of the provisions but that those restrictions did not apply retroactively to bar arbitration of his claims related to the 2010 account. J.A. 297–98. The court explained that the 2010 Account was updated to include an arbitration provision with an effective date of February 1, 2013—several months before June 1, 2013, the effective date of the relevant provisions of Dodd-Frank.[6] J.A. 298. The court then found that the relevant Dodd-Frank provisions did not apply retroactively to the 2010 Account because there was no language in the statute

---

[6] The Dodd-Frank Act took effect on July 22, 2010. Pub. L. No. 111-203, 124 Stat. 1376. The Act provided that any "sections of this title for which regulations have not been issued" eighteen months after its enactment "shall take effect on such date." Dodd-Frank Act § 1400(c), 124 Stat. at 2136. The Consumer Financial Protection Bureau ("CFPB") issued its final rule implementing the relevant section of the Act on January 20, 2013, and provided an effective date for the provisions of June 1, 2013. *See* Loan Originator Compensation Requirements Under the Truth in Lending Act (Regulation Z), 78 Fed. Reg. 11,280, 11,387 (Feb. 15, 2013) (to be codified at 12 C.F.R. pt. 1026).

evidencing an intent for the provisions to overcome the presumption against retroactivity. J.A. 297.

PNC filed an appeal on January 12, 2021, and Mr. Lyons filed a cross-appeal on January 25, 2021. J.A. 303–06. PNC appeals the district court's partial denial of its motion to compel arbitration, and Mr. Lyons cross-appeals the district court's partial grant of the motion to compel arbitration.

## II.

We review a district court's determination regarding the arbitrability of a dispute de novo. *See Mey v. DIRECTV, LLC*, 971 F.3d 284, 288 (4th Cir. 2020); *Aggarao v. MOL Ship Mgmt. Co., Ltd.*, 675 F.3d 355, 365 (4th Cir. 2012) ("We review de novo a district court's determination on arbitrability of a civil action."). In applying the de novo standard, we must "give due regard to the federal policy favoring arbitration and resolve 'any doubts concerning the scope of arbitrable issues . . . in favor of arbitration.'" *Hill v. Peoplesoft USA, Inc.*, 412 F.3d 540, 543 (4th Cir. 2005) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983)). But, while there is a general policy favoring arbitration, "the [Federal Arbitration Act's] mandate [can be] overridden by a contrary congressional command." *See Compucredit Corp. v. Greenwood*, 565 U.S. 95, 98 (2012). "If such an intention exists, it will be discoverable in the text of the [statute], its legislative history, or an inherent conflict between arbitration and the [statute's] underlying purposes." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991).

The burden of establishing that "Congress intended to preclude a waiver of a judicial forum" is on the party challenging arbitration. *Id.* at 26.

## III.

## A.

The Dodd-Frank Act, which was passed in response to the 2008 financial crisis, amended TILA, including by adding a section—§ 1639c(e)—entitled "Arbitration," which imposed restrictions on the use of mandatory arbitration agreements for mortgage-related transactions. *See* 15 U.S.C. § 1639c(e). Two provisions of § 1639c(e) are relevant to this case. First, § 1639c(e)(1) states:

> No residential mortgage loan and *no extension of credit under an open end consumer credit plan secured by the principal dwelling of the consumer may include terms which require arbitration* or any other nonjudicial procedure as the method for resolving any controversy or settling any claims arising out of the transaction.

15 U.S.C. § 1639c(e)(1) (emphasis added). Second, § 1639c(e)(3) states:

> No provision of any residential mortgage loan or of any extension of credit under an open end consumer credit plan secured by the principal dwelling of the consumer, and *no other agreement between the consumer and the creditor relating to the residential mortgage loan or extension of credit referred to in [§ 1639c(e)(1)], shall be applied or interpreted so as to bar a consumer from bringing an action in an appropriate district court of the United States*, or any other court of competent jurisdiction, pursuant to section 1640 of this title or any other provision of law, for damages or other relief in connection with any alleged violation of this section, any other provision of this subchapter, or any other Federal law.

15 U.S.C. § 1639c(e)(3) (emphasis added).

The district court found, in the alternative, that both § 1639c(e)(1) and § 1639c(e)(3) would preclude the arbitration of Mr. Lyons's claims, if the agreement arose today.

B.

First, we must consider whether the district court erred in interpreting the Dodd-Frank Act to make the arbitration provision in Mr. Lyons's Account Agreement inapplicable to his set-off claims. The district court provided two independent statutory bases for finding that the Dodd-Frank Act prohibits arbitration of the claims raised by Mr. Lyons in this case: § 1639c(e)(1) and § 1639c(e)(3). Since we agree that § 1639c(e)(3) bars arbitration of Mr. Lyons's claims, we need not determine whether § 1639c(e)(1) also applies and prohibits arbitration of his claims.

The plain language of § 1639c(e)(3) is clear and unambiguous: a consumer cannot be prevented from bringing a TILA action in federal district court by a provision in an agreement "relate[d] to" a residential mortgage loan—like a HELOC. *See* 15 U.S.C. § 1639c(e)(3). As the Supreme Court explained in *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374 (1992), "[t]he ordinary meaning of [the] words ["relating to"] is a broad one—'to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with,'" *id.* at 383 (quoting Black's Law Dictionary 1158 (5th ed. 1979)). By all accounts, Mr. Lyons's Account Agreement stands in relation to, pertains to, refers to, and has bearing on or concerns his HELOC. PNC relied on a set-off provision included in the deposit Account Agreement as a mechanism for repayment of the

9

amount outstanding on his HELOC loan. Thus, by PNC's own design, the Account Agreement and the HELOC loan are connected.[7]

PNC insists, however, that § 1639c(e)(3) cannot prohibit arbitration of Mr. Lyons's claims because the provision was not intended to restrict agreements to arbitrate. Rather, argues PNC, the provision limits a consumer from agreeing to waive certain claims but does not control the proper judicial forum for resolution of such claims. Appellant's Br. 30–31. In support of this argument, PNC notes that § 1639c(e)(3) does not include the term "arbitration" and cites to a series of Supreme Court cases which have held that arbitration is not precluded merely because a statute provides a plaintiff with a cause of action. *See CompuCredit*, 565 U.S. at 101 ("We have repeatedly recognized that contractually required arbitration of claims satisfies the statutory prescription of civil liability in court."); *Gilmer*, 500 U.S. at 27–28; *Shearson/American Express v. McMahon*, 482 U.S. 220, 238–40 (1987); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 628–40 (1985).

---

[7] Although few prior courts have interpreted § 1639c(e)(3), two recent district courts have similarly interpreted the provision. *See Attix v. Carrington Mortg. Servs., LLC*, No. 1:20-cv-22183-UU, 2020 WL 5757624 (S.D. Fla. Sept. 16, 2020); *Thomas-Lawson v. Carrington Mortg. Servs., LLC*, No. 2:20-cv-07301-ODW, 2021 WL 1253578 (C.D. Cal. Apr. 5, 2021). In *Attix* and *Thomas-Lawson*, the district courts considered an agreement between a homeowner, his mortgage servicer, and a third-party payment processor, which provided for the homeowner to make mortgage payments by phone. *Attix*, 2020 WL 5757624; *Thomas-Lawson*, 2021 WL 1253578. The *Attix* court found "the statutory language [of § 1639c(e)(3)] to be clear and unambiguous" and found that "[m]aking a payment on a residential mortgage loan certainly 'relate[s] to the residential mortgage loan.'" 2020 WL 5757624, at *9; *see also Thomas-Lawson*, 2021 WL 1253578, at *3 ("[A]gree[ing] with the *Attix* court's reasoning and reach[ing] the same conclusion here."). As in *Attix* and *Thomas-Lawson*, the Account Agreement here provides a method for the payment of Mr. Lyons's HELOC and so it "relates to" his HELOC.

But these cases are inapposite. In contrast to the provisions at issue in the cases cited by PNC, which *authorize* a cause of action, § 1639c(e)(3) *expressly prohibits* a covered agreement from *barring* a consumer "from bringing an action in an appropriate district court of the United States, or any other court of competent jurisdiction." 15 U.S.C. § 1639c(e)(3). There is a substantive difference between finding that arbitration is an appropriate alternative mechanism to enforce a statutorily created right to sue and overriding an express congressional command proscribing waiver of a specific judicial forum. *Cf. Mitsubishi*, 473 U.S. at 628 ("Having made the bargain to arbitrate, the party should be held to it *unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue*." (emphasis added)); *Gilmer*, 500 U.S. at 26.

Further, PNC's position is difficult to reconcile with the structure of Dodd-Frank. While the text of § 1639c(e)(3) does not include the term "arbitration," the provision is found in a short section of the Act entitled "Arbitration." *See generally Yates v. United States*, 574 U.S. 528, 540 (2015) ("While . . . headings are not commanding, they supply cues [as to congressional intent]."); *Almendarez-Torres v. United States*, 523 U.S. 224, 234 (1998) (noting that "'the title of a statute and the heading of a section' are 'tools available for the resolution of a doubt about the meaning of a statute.'" (quoting *Brotherhood of R.R. Trainmen v. Balt. & Ohio R.R. Co.*, 331 U.S. 519, 528–29 (1947))). Moreover, our interpretation is consistent with the legislative history of the provision; in a contemporaneous report, Congress described § 1639c(e) as "prohibit[ing] mandatory arbitration clauses." H.R. Rep. No. 111-517, at 877 (2010). And it is also consistent with

the CFPB's implementing regulations, which state that "[the] prohibition [in § 1639c(e)(3)] does not limit a consumer and creditor or any assignee from agreeing, after a dispute or claim under the transaction arises, to settle or use arbitration or other non-judicial procedure to resolve that dispute or claim." 12 C.F.R. § 1026.36(h). This regulation would be unwarranted unless § 1639c(e)(3) prohibits pre-dispute agreements to resolve claims in a non-judicial forum.

Given the unambiguous language of § 1639c(e)(3), it is implausible that Congress did not intend the provision to prohibit pre-dispute arbitration agreements. Since, Mr. Lyons's Account Agreement clearly "relates to" his HELOC agreement, we find that, properly interpreted, § 1639c(e)(3) bars arbitration of Mr. Lyons's set-off claims.

IV.

A.

Having determined that § 1639c(e)(3) precludes arbitration of Mr. Lyons's set-off claims, we must next determine whether the district court nevertheless erred by finding that the provision applied to bar arbitration of Mr. Lyons's claims related to the 2014 Account—even though the parties had a long-standing, and pre-existing depository relationship prior to the effective date of the relevant Dodd-Frank provisions.

The district court found that § 1639c(e)(3) precluded arbitration of Mr. Lyons's claims related to the 2014 Account because that Account was opened after the provision's effective date. The court concluded that § 1639c(e)(3) did not preclude arbitration of claims related to the 2010 Account, however, because that Account "was updated to

12

include an arbitration provision and a class action waiver effective February 1, 2013," prior to the effective date of Dodd-Frank. The district court then determined that § 1639c(e)(3) did not apply retroactively to arbitration agreements formed before its effective date and, therefore, did not apply retroactively to the arbitration clause added in the 2013 Account Agreement.

On appeal, PNC contends that the district court erred in denying its motion to compel arbitration of claims related to the 2014 Account because the court should have found that those claims are arbitrable pursuant to the arbitration clause found in the 2013 Account Agreement. Appellant's Br. 15–18. Specifically, PNC argues that when Mr. Lyons opened the 2014 Account, he was not entering a new contractual relationship with PNC but merely continuing an existing relationship with the bank and, therefore, that the later Account is properly covered by the arbitration provision in the earlier Account Agreement. *Id.* at 16–17. In support of this argument, PNC points to the text of the Account Agreement, which it argues shows a clear intent to cover all depository accounts between Mr. Lyons and PNC, including future accounts. *Id.* at 16. For example, one provision of the 2010 Account Agreement states that "[a]ll PNC Bank checking, savings, and money market accounts are subject to this Account Agreement, including the products currently listed in the Consumer Schedule of Service Charges and Fees." J.A. 168.

But a review of the record makes clear that the arbitration provision applicable to the 2010 Account via the 2013 Account Agreement was not entered into by Mr. Lyons until June 11, 2013—ten days after the effective date of § 1639c(e)(3). Thus, the

13

arbitration clause is precluded by § 1639c(e)(3) from applying to Mr. Lyons's claims related to either the 2010 Account or the 2014 Account.

"[T]he issue of whether an arbitration agreement has been formed is an issue of contract law," and so "we apply the 'ordinary state-law principles that govern the formation of contracts.'" *Berkeley Cnty. Sch. Dist. v. Hub Int'l Ltd.*, 944 F.3d 225, 236 (4th Cir. 2019) (quoting *Minnieland Private Day Sch., Inc. v. Applied Underwriters Captive Risk Assurance Co.*, 913 F.3d 409, 415 (4th Cir. 2019)). Under Maryland law, a consumer's silence, including a failure to opt out, may be considered an acceptance of modified terms so long as the parties' original agreement provides that such silence, following a specified form of notice, will be considered assent to the new terms. *See DIRECTV Inc. v. Mattingly*, 829 A.2d 626, 633 (Md. 2003). Further, "it is well-established in Maryland that 'laws subsisting *at the time of the making of a contract* enter into and form a part thereof as if expressly referred to or incorporated in its terms . . . .'" *John Deere Constr. & Forestry Co. v. Reliable Tractor, Inc.*, 406 Md. 139, 146 (2008) (emphasis added) (quoting *Dennis v. Mayor & City Council of Rockville*, 286 Md. 184, 189 (1979) (further noting that "the principle embraces alike those provisions which affect the validity, construction, discharge and enforcement of the contract")).

Although the stated effective date of the 2013 Account Agreement was February 1, 2013, customers were given forty-five days to opt out of the Arbitration Clause. J.A. 199. Here, PNC's own records show that Mr. Lyons had until June 11, 2013, to opt out of the arbitration provision. *See* J.A. 211. When Mr. Lyons failed to opt out by the deadline, PNC was entitled to consider Mr. Lyons's silence as an acceptance of the arbitration provision,

14

including its effective date of February 1, 2013, but PNC could only do so after the specified opt-out period had lapsed. Thus, the arbitration agreement between Mr. Lyons and PNC was not *formed* until June 11, 2013—after the effective date of § 1639c(e)(3).

Of course, two parties may, as here, agree to bind their prior conduct with an earlier effective date. But in doing so, they cannot ignore a statutory mandate existing *at the time of their agreement*. *See John Deere*, 406 Md. at 146. Indeed, without such a rule, parties could contract around congressional commands merely by selecting an effective date for their agreement that predates the effective date of an unfavorable statute, rendering it a dead letter.

Since the 2013 arbitration agreement between Mr. Lyons and PNC was not formed until after the effective date of § 1639c(e)(3), the provision applies prospectively to both the 2010 Account and the 2014 Account.[8]

## B.

PNC argues, however, that we lack jurisdiction to review the district court's order compelling arbitration of the 2010 Account Agreement. It is true that orders compelling arbitration are usually not appealable under § 16(b) of the Federal Arbitration Act ("FAA"). *See* 9 U.S.C. § 16(b) ("Except as otherwise provided . . . an appeal may not be taken from an interlocutory order . . . (2) directing arbitration to proceed under section 4 of this title.") But as many of our sister circuits have found, this prohibition does not apply

---

[8] Since we find that the formation of the relevant arbitration agreement postdates the effective date of the relevant provisions of Dodd-Frank, we need not consider, as the district court did, whether the Act's provisions would apply retroactively to the agreement if it predated the Act's effective date.

to pendent appellate jurisdiction.[9] *See Johnson v. Consumerinfo.com, Inc.*, 745 F.3d 1019, 1023 n.3 (9th Cir. 2014) ("Nor does § 16(b) restrict pendant appellate jurisdiction." (citing *Quackenbush v. Allstate Ins. Co.*, 121 F.3d 1372, 1379 (9th Cir. 1997)); *Freeman v. Complex Computing Co., Inc.*, 119 F.3d 1044, 1050 (2d Cir. 1997) (holding that "[there is] in the FAA no indication by Congress that the long-standing doctrine of pendent appellate jurisdiction is totally eliminated as to appeals of orders staying federal court proceedings pending arbitration" and exercising pendent appellate jurisdiction over an appeal of an order compelling arbitration); *Nat'l R.R. Passenger Corp. v. ExpressTrak, LLC*, 330 F.3d 523, 529 (D.C. Cir. 2003) (same); *see also Manion v. Nagin*, 255 F.3d 535, 540 (8th Cir. 2001) (indicating that the Eighth Circuit would exercise pendent appellate jurisdiction over an interlocutory order directing arbitration if it is "'inextricably intertwined' with" or "necessary to ensure meaningful review of" an appealable issue (citation omitted)). *But*

---

[9] My good colleague in dissent cites to several cases to argue that "our prior decisions point in a different direction." Dissenting Op. 21. But, as he recognizes, the cases he cites do not deal with the same context, and we find them unavailing. *See, e.g.*, *Stedor Enters., Ltd. v. Armtex, Inc.*, 947 F.2d 727, 729–32 (4th Cir. 1991) (considering whether an order compelling arbitration was appealable as a "final decision" and also recognizing the pre-existing background law against which Congress legislated in passing the FAA); *In re Pisgah Contractors, Inc.*, 117 F.3d 133, 136 (4th Cir. 1997) (describing the general requirements of § 16 and finding that the district court's single order compelling arbitration was not appealable without considering, or reason to consider, pendent appellate jurisdiction); *Moses v. CashCall, Inc.*, 781 F.3d 63, 79–81 (4th Cir. 2015) (per curiam) (recognizing that "the doctrine of pendent appellate jurisdiction is available 'when an issue is inextricably intertwined with a question that is the proper subject of an immediate appeal'" (citation omitted) but declining to apply it on the facts of that case, which did not include an interlocutory order under § 16(b)); *United States v. Bankers Ins. Co.*, 245 F.3d 315, 319 (4th Cir. 2001) (discussing a district court's lack of discretion under § 3 of the FAA to deny a stay "[i]f the issues in the case are within the contemplation of the arbitration agreement" and not discussing the FAA's restrictions on appellate review of such interlocutory orders under § 16(b)).

*see Moglia v. Pac. Emps. Ins. Co. of N. Am.*, 547 F.3d 835, 838–39 (7th Cir. 2008). *See generally Braintree Lab'ys, Inc. v. Citigroup Glob. Markets Inc.*, 622 F.3d 36, 44–45 (1st Cir. 2010) (noting that other circuits disagree over whether pendent appellate jurisdiction "permit[s] the review of interlocutory orders that § 16 brands as non-appealable" but taking no position based on the facts of that case); *Al Rushaid v. Nat'l Oilwell Varco, Inc.*, 814 F.3d 300, 303–04 (5th Cir. 2016) (declining to exercise pendent appellate jurisdiction over an order compelling arbitration but "without deciding whether pendent appellate jurisdiction may properly be exercised in this context").

"Pendent appellate jurisdiction is an exception of limited and narrow application driven by considerations of need, rather than of efficiency." *Rux v. Republic of Sudan*, 461 F.3d 461, 475 (4th Cir. 2006). It is appropriate only "(1) when an issue is 'inextricably intertwined' with a question that is the proper subject of an immediate appeal; or (2) when review of a jurisdictionally insufficient issue is 'necessary to ensure meaningful review' of an immediately appealable issue." *Id.* at 475 (citing *Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 50–51 (1995)). "Two separate rulings are 'inextricably intertwined' if 'the same specific question will underlie both the appealable and the non-appealable order, such that resolution of the question will necessarily resolve the appeals from both orders at once.'" *Scott v. Fam. Dollar Stores, Inc.*, 733 F.3d 105, 111 (4th Cir. 2013) (quoting *Ealy v. Pinkerton Gov. Servs., Inc.*, 514 F. App'x 299, 309 (4th Cir. 2013) (per curiam)); *see also Myers v. Hertz Corp.*, 624 F.3d 537, 553 (2d Cir. 2010).

In this case, the district court's partial grant of PNC's order to compel arbitration of the 2010 Account is "inextricably intertwined" with the district court's partial denial of the

order to compel arbitration of the 2014 Account because our consideration of the latter order necessarily resolves the former. As discussed above, PNC contends on appeal that the district court erred in finding that § 1639c(e)(3) precluded arbitration of Mr. Lyons's claims related to the 2014 Account because it should have found that the arbitration provision in the 2013 Account Agreement applied to the 2014 Account. We find, however, that PNC cannot rely on the arbitration clause in the 2013 Account Agreement to require arbitration of claims related to the 2014 Account because Mr. Lyons did not accept the terms of the arbitration clause until June 11, 2013—after the effective date of § 1639c(e)(3), which prohibits the arbitration of such claims. The same issue underlies and necessarily resolves the arbitrability of Mr. Lyons's claims related to the 2010 Account. Since the arbitration clause in the 2013 Account Agreement was not agreed to until June 11, 2013, it also cannot prevent § 1639c(e)(3) from precluding arbitration of Mr. Lyons's claims related to the 2010 Account.

***

Because we find that § 1639c(e)(3) of the Dodd-Frank Act precludes pre-dispute agreements requiring the arbitration of claims related to residential mortgage loans and that the arbitration agreement relevant to this appeal was not formed until after the effective date of § 1639c(e)(3), we find that PNC may not compel arbitration of Mr. Lyons's claims as to both the 2010 Account and the 2014 Account.

*AFFIRMED IN PART AND REVERSED IN PART*

18

QUATTLEBAUM, Circuit Judge, concurring in part and dissenting in part:

I agree with the majority's analysis that 15 U.S.C. § 1639c(e)(3) applies to the kind of set-off claim Mr. Lyons raises here. I also concur that § 1639c(e)(3) bars arbitration over the 2014 Account because both the account and its own terms and conditions postdate Dodd-Frank. *Cf.* Maj. Op. 5 ("Mr. Lyons . . . again agreed to be 'bound by the terms and conditions' of the 2014 version of the Account Agreement, which included the same arbitration clause as in the 2013 version. Mr. Lyons was again provided an opportunity to opt out of the arbitration provision and did not." (internal citation omitted)). I write separately from my colleagues, however, because I do not believe we have jurisdiction to adjudicate Mr. Lyons's cross-appeal. Thus, I would limit our analysis to resolving PNC Bank's appeal—whether the district court erred in denying PNC Bank's motion to compel arbitration as to the 2014 Account—and proceed no further.

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree. It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (internal citations omitted).

Accordingly, we may address Mr. Lyons's cross-appeal on the merits only if we have the jurisdiction to do so. I start from a premise that "borders on the axiomatic"— "subject to certain limited exceptions, our appellate jurisdiction is limited to final orders from the district courts." *Rux v. Republic of Sudan*, 461 F.3d 461, 474 (4th Cir. 2006) (citing 28 U.S.C. § 1291). And of course, there is no final order in our dispute. The district

19

court's interlocutory decision does not provide appellate jurisdiction under the typical exceptions either, such as an injunction decision or a question certified by a district judge. *See* 28 U.S.C. § 1292.

Mr. Lyons argues that we may reach his cross-appeal because we have pendent appellate jurisdiction. "Pendent appellate jurisdiction is a 'judicially-created, discretionary exception to the final judgment requirement' that allows the Court to 'retain the discretion to review issues that are not otherwise subject to immediate appeal when such issues are so interconnected with immediately appealable issues that they warrant concurrent review.'" *Rainbow Sch., Inc. v. Rainbow Early Educ. Holding LLC*, 887 F.3d 610, 622 (4th Cir. 2018).

The problem with his argument is that the Federal Arbitration Act explicitly prohibits us from exercising such discretion. The Act generally states that "an appeal may not be taken from an interlocutory order—(1) granting a stay of any action under section 3 of this title; [or] (2) directing arbitration to proceed under section 4 of this title . . . ." 9 U.S.C. § 16(b). And since the district court compelled arbitration under Sections 3 and 4 of the Federal Arbitration Act, § 16(b) directly applies.

The majority concludes that our discretion over pendent appellate jurisdiction trumps the Federal Arbitration Act's explicit bar. In doing so, the majority cites to precedent from other circuits. Yet the majority overlooks the fact that even our sister courts are split on this debate. *Compare Al Rushaid v. Nat'l Oilwell Varco, Inc.*, 814 F.3d 300, 303–04 (5th Cir. 2016), *and Moglia v. Pac. Emps. Ins. Co. of N. Am.*, 547 F.3d 835, 838 (7th Cir. 2008), *with Nat'l R.R. Passenger Corp. v. ExpressTrak, L.L.C.*, 330 F.3d 523,

20

527–28 (D.C. Cir. 2003), *and Freeman v. Complex Computing Co.*, 119 F.3d 1044, 1049–50 (2d Cir. 1997), *and Johnson v. Consumerinfo.com, Inc.*, 745 F.3d 1019, 1023 n.3 (9th Cir. 2014). *See generally Braintree Lab'ys, Inc. v. Citigroup Glob. Markets Inc.*, 622 F.3d 36, 44–45 (1st Cir. 2010) (recognizing the "disagree[ment] over whether this seldom-used doctrine could ever permit the review of interlocutory orders that § 16 brands as non-appealable" and declining to take a position because there was no pendent appellate jurisdiction under the facts of that case).

And while this Circuit has not explicitly spoken on this matter, our prior decisions point in a different direction. First, our decision in *Stedor Enterprises, Ltd. v. Armtex, Inc.*, 947 F.2d 727, 729–32 (4th Cir. 1991), strictly applies the text of the Act, albeit in the context of determining whether an order compelling arbitration was "final" when the arbitrability of the dispute was the only issue before the district court. Following that approach here would require adhering to § 16(b)'s jurisdictional bar. *See also In re Pisgah Contractors, Inc.*, 117 F.3d 133, 136 (4th Cir. 1997) (discussing how the Federal Arbitration Act limits the immediate review of a decision favoring arbitration to "only two circumstances," which are a final decision and an interlocutory appeal certification pursuant to 28 U.S.C. § 1292(b)); *Moses v. CashCall, Inc.*, 781 F.3d 63, 79–80 (4th Cir. 2015) (per curiam) (noting that the court should not apply pendent appellate jurisdiction to convert "a narrow, statutorily authorized interlocutory appeal into a full-blown appeal").

Second, we have recognized that when Congress expressly prohibited us from hearing an interlocutory order, we have no discretion to expand our jurisdiction. *See United States v. Bankers Ins. Co.*, 245 F.3d 315, 319 (4th Cir. 2001) (discussing how the Federal

21

Arbitration Act removes typical court discretion, such as denying stays of arbitrable matters); *cf. Apprendi v. New Jersey*, 530 U.S. 466, 482 n.9 (2000) ("[J]udges' discretion is constrained by the 'limits fixed by law.'"). Combining these two principles with the fact that the presumption lies in restraining our jurisdiction, I do not see how Mr. Lyons may overcome the FAA's statutory bar to our jurisdiction.[*]

I realize my view would place the parties in an awkward procedural situation. If we lack jurisdiction over Mr. Lyons's cross-appeal, as I believe we do, the parties must simultaneously litigate related issues in federal court and in arbitration. Of course, addressing the cross-appeal now may be more efficient in this particular case. But our task should be to follow the law wherever it takes us, not fashion the most efficient remedy in a particular case—especially when doing so deviates from the Federal Arbitration Act's statutory bar to our appellate jurisdiction. Importantly, "[w]e are constrained by the

---

[*] Even if we may somehow overcome this statutory bar, I also question how Mr. Lyons establishes the limited exceptions justifying pendent appellate jurisdiction. Pendent appellate jurisdiction is available only if (1) the issue "is 'inextricably intertwined' with a question that is the proper subject of an immediate appeal," or (2) a "review of a jurisdictionally insufficient issue is 'necessary to ensure meaningful review' of an immediately appealable issue." *Rainbow Sch.*, 887 F.3d at 622. Mr. Lyons primarily relies on the first exception. "Two separate rulings are 'inextricably intertwined' if 'the 'same *specific* question' will 'underlie both the appealable and the non-appealable order,' such that resolution of the question will *necessarily* resolve the appeals from both orders at once.'" *Scott v. Fam. Dollar Stores, Inc.*, 733 F.3d 105, 111 (4th Cir. 2013) (emphases added). And when we decide the arbitrability of the 2014 Account, we need not decide how the 2013 Account Agreement implicates the 2014 Account. When Mr. Lyons opened the 2014 Account, that Account had its own account agreement—including another arbitration clause that would only become effective once a new opt-out period expired. *See* Maj. Op. 5 (citing J.A. 162). More importantly, the arbitration clause in the 2014 Account Agreement clearly postdated the effective date of Dodd-Frank's arbitration bar, both in the arbitration clause's inception and in its expiration of the opt-out period. Such resolution in no way would implicate how we decide arbitrability of the 2010 Account.

language of the Supreme Court as well as our own precedent from recognizing efficiency considerations as a basis for the exercise of pendent appellate jurisdiction." *Rux*, 461 F.3d at 475.

Because we lack jurisdiction to consider Mr. Lyons' cross-appeal, I respectfully dissent from my colleagues on the issues related to the 2010 Account.